PEOPLE v HANDLEY

Docket No. 78-4288. Submitted June 2, 1980, at Detroit.—Decided October 24, 1980. Leave to appeal applied for.

Joseph Handley, Jr., was convicted of first-degree murder and possession of a firearm during the commission of a felony, Detroit Recorder's Court, Robert L. Evans, J. He appeals, alleging that the trial court's instruction to the jury on lesser-included offenses was coercive and, thus, prejudicial and that the trial court erred in denying his motion to suppress his prior criminal record and admitting into evidence a gun recovered subsequent to a warrantless search of the room in which he was arrested. *Held:*

1. The trial court's instruction was impliedly coercive in that it conveyed the impression that there must be acquittal on one charge before lesser-included offenses could be considered and, as such, constitutes error requiring reversal.

2. The trial court did not note recognition of its discretion of the factor underlying its decision to deny defendant's motion to suppress his prior criminal record as required.

3. The search of the room in which defendant was arrested and the seizure of the gun later admitted into evidence occurred incident to defendant's arrest within an area in his immediate control. Under such circumstances no warrant was required and the trial court did not err in denying defendant's motion to suppress the introduction of the gun into evidence.

Reversed and remanded for new trial.

REFERENCES FOR POINTS IN HEADNOTES

[1] 5 Am Jur 2d, Appeal and Error § 891.
   75 Am Jur 2d, Trial § 906.
[2] 75 Am Jur 2d, Trial §§ 876-882.
[3] 29 Am Jur 2d, Evidence § 321.
   81 Am Jur 2d, Witnesses § 668.
[4] 75 Am Jur 2d, Trial § 863.
   81 Am Jur 2d, Witnesses § 563.
[5] 75 Am Jur 2d, Trial § 869.
[6] 68 Am Jur 2d, Searches and Seizures § 35.
[7] 5 Am Jur 2d, Arrest § 73.
   68 Am Jur 2d, Searches and Seizures § 37.

BRONSON, J., concurred, underscoring the brutal nature of the crime and pointing out that it is a tribute to our system of justice and our patience that defendant is to be accorded a new trial in the quest for a fair determination of his guilt.

1. CRIMINAL LAW — JURY INSTRUCTIONS — FAILURE TO MAKE TIMELY OBJECTION — APPEAL — STANDARD OF REVIEW.

   A failure to make a timely objection to a jury instruction in a criminal case precludes appellate review in the absence of manifest injustice.

2. CRIMINAL LAW — JURY INSTRUCTIONS — ORDER OF CONSIDERATION OF OFFENSES — APPEAL — STANDARD OF REVIEW.

   An instruction to a jury in a criminal case should not be deemed erroneous on appeal where a suggestion is made as to the order of consideration of the charged offense and lesser-included offenses absent the conveyance of an impression, amounting to implied coercion, that acquittal must obtain on one charge prior to consideration of another.

3. CRIMINAL LAW — EVIDENCE — IMPEACHMENT OF WITNESSES — EVIDENCE OF PRIOR CONVICTIONS — RULES OF EVIDENCE.

   A witness's credibility may be attacked by evidence of conviction of a crime if elicited from him or established by public record during cross-examination, but only if the crime was punishable by death or imprisonment in excess of one year or involved theft, dishonesty, or false statement and the trial court determines that the probative value of admitting the evidence outweighs its prejudicial effect (MRE 609[a][1], [2]).

4. CRIMINAL LAW — TRIAL — IMPEACHMENT OF WITNESSES — EVIDENCE OF PRIOR CONVICTIONS — JUDICIAL DISCRETION — GROUNDS FOR ADMISSION.

   The determination to allow impeachment of a witness in a criminal case by evidence of his prior convictions is within the discretion of a trial court which, in making its determination, should weigh the nature of the prior offense, whether it substantially approximates the charged offense, and the effect on the decisional process of a failure of an accused to testify out of a fear of impeachment.

5. CRIMINAL LAW — TRIAL — IMPEACHMENT OF WITNESSES — EVIDENCE OF PRIOR CONVICTIONS — PROCEDURE.

   A trial court, in ruling in a criminal case on the admission of evidence of a defendant's prior convictions for purposes of impeachment, should note recognition of its discretion and the factors underlying its decision on the record, or the record

should specifically indicate the court's cognizance of the nature of the prior offenses, any substantial approximation of the prior offense to that charged, and any effect on the decisional process of a failure of the defendant to testify out of fear of impeachment.

6. SEARCHES AND SEIZURES — WARRANTLESS SEARCHES — REASONABLE-NESS — CONSTITUTIONAL LAW.

A warrantless search and seizure is unreasonable per se and violates the Constitutions of the United States and the State of Michigan unless it is shown to be within an exception to the warrant requirement, the burden of showing such an exception being on the state (US Const Am IV, Const 1963, art 1, § 11).

7. SEARCHES AND SEIZURES — WARRANTLESS SEARCHES — REASONABLE-NESS — SUPPRESSION OF EVIDENCE.

A warrantless search and seizure is permissible where it is incident to an arrest and the search is made of the arrestee's person or the area from within which he might gain possession of a weapon or destructible evidence, and evidence so seized should not be suppressed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Edward Reilly Wilson,* Principal Attorney, Appeals, and *Anne B. Wetherholt,* Assistant Prosecuting Attorney, for the people.

*Robert E. Slameka,* for defendant on appeal.

Before: R. M. MAHER, P.J., and BRONSON and T. C. QUINN,* JJ.

PER CURIAM. The defendant Joseph Handley, Jr., and codefendant Caroline Pegram were charged with first-degree murder, MCL 750.316; MSA 28.548, and with possession of a firearm during the commission of a felony, MCL 750.227b; MSA 28.424(2). Codefendant Pegram entered a plea of

---

* Former Court of Appeals Judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

guilty to second-degree murder, MCL 750.317; MSA 28.549, and felony firearm, MCL 750.227b; MSA 28.424(2). Defendant Handley was tried before a jury in the Detroit Recorder's Court, and, on June 14, 1978, he was convicted as charged. The defendant was sentenced to a term of life imprisonment for murder with an additional two-year mandatory sentence for the felony firearm conviction. On September 27, 1978, defendant's motion for a new trial was denied. Defendant appeals as of right.

At approximately 11 a.m. on February 8, 1978, a passerby alerted several officers in a patrol car that there was a dead body lying in a ditch in a deserted area near Leland and Russell streets in Detroit. The officers found the body of a young black female whose head had been "blown open". There was blood everywhere. A search of the immediate locale turned up a man's gold ring lying 3 feet from the body, a man's digital watch lying 20 feet from the body, a hat with blood on it, a belt from a coat, and a bloody potato chip bag. The body was later identified as Ira Marie Hesterley. An autopsy disclosed that the victim had died as the result of two gunshot wounds to the head. One of these was a "contact" wound, meaning that the muzzle of the gun had been placed right against the victim's head when the gun was fired. There was also evidence of strangulation, as well as seven lacerations which were "blunt force" injuries which may have been the result of pistol whipping.

At 1:30 a.m. on February 9, 1978, the police observed a brown, two-door Mercury, which was reportedly involved in an armed robbery, parked in front of the Town Motel. A box of bullets was lying on the front seat. The officers arrested defen-

dant and Ms. Pegram in a motel room where they also found a gun. A blue parka with brown stains on the front was hanging in the closet. Later testing disclosed that these were bloodstains of the same type as that of the victim. There was also a small trace of blood of undetermined type on the front passenger door of the Mercury Cougar and a spent bullet casing under the driver's seat. Ballistic tests revealed that the bullet slugs removed from the victim's head had been fired from the gun recovered from defendant's motel room.

The defendant had been dating the victim for about a month prior to her death. The defendant was also "going with" Ms. Pegram and shared an apartment with Pegram and her homosexual lover, Renee Smithson. Ms. Smithson identified the ring and watch recovered near the victim's body as belonging to the defendant. She also identified the blue parka as belonging to the defendant.

Mitchell Sanders, a neighbor of the defendant, stated that he had a conversation with the defendant on the day of the murder. The defendant told Mitchell that earlier that day he (defendant), Pegram, and Hesterley had "jumped on some girl" and pulled her into a car. The defendant was afraid that Hesterley might go to the police, and defendant was worried because he did not want to go back to the penitentiary. The defendant said he did not know whether he should "take her out", *i.e.,* kill her. Shortly after this conversation, Sanders saw defendant leave the building with Ms. Hesterley. Michael Sanders Mitchell's twin brother, said that he saw the defendant at the apartment building on the evening of February 7, 1978, some time before midnight. At that time, defendant allegedly said, "I'm going to fuck that bitch up". Michael did not know who the "bitch" was.

At the trial, defense counsel introduced a taped statement made by the defendant and Ms. Pegram on February 9, 1978, and taken by Detroit Police Sergeant Gilbert Hill as follows. Ms. Pegram said that she told defendant she wanted "to beat [the victim's] ass", and he told her he knew of a place where she could beat the victim. When they arrived on the scene, defendant pushed the victim out of the car. He got out and hit the victim and pushed her to the ground. Pegram then attempted to strangle the victim and fell on the victim's head with her knees a couple of times. Pegram then stabbed the victim in the head with a screwdriver and hit her on the head with a pistol. She then decided to kill her and shot her twice in the head, using defendant's gun. Pegram said that she had not intended to kill the victim prior to this time and claimed that defendant did not know that she would shoot the victim. The defendant then stated that he had no idea that Ms. Hesterley was going to be killed when he struck her and that he told Pegram to stop the attack. Ms. Pegram did not testify at the trial.

On cross-examination, Sergeant Hill indicated that after making the taped statement, Pegram told him that the defendant had actually pistol whipped and shot the victim, but she did not want him to go back to prison as defendant was afraid he would be hurt if he returned to prison. Sergeant Hill also revealed that, in a statement made by Pegram to Sergeant Brantley prior to the taped statement, she admitted that she was the one who shot the victim twice.

We find that one of the issues raised by the defendant on appeal is dispositive. Defendant claims that the trial court's jury instruction on lesser offenses was coercive because it required the

jurors to acquit the defendant of the charged offense before considering any lesser offenses.

The instruction in question provided as follows:

"Quite obviously you must determine in effect whether or not, first, the defendant is guilty of first degree murder. If you find the evidence insufficient, if you find for example there is no premeditation, you should turn to determine whether or not the defendant is guilty of second degree murder. If you find the evidence is insufficient, finding, for example, there is no malice, then you must determine whether or not the defendant is guilty of manslaughter. The unlawful killing by some act of the defendant in the manner that I have described, if you find not insufficient evidence of manslaughter, then, of course, the defendant is entitled to acquittal on all three of the homicide charges."

In the absence of manifest injustice, a failure to make timely objection to a jury instruction precludes appellate review. *People v Dixon,* 84 Mich App 675, 685; 270 NW2d 488 (1978), *People v Sherman Hall,* 77 Mich App 456; 258 NW2d 517 (1977). In the instant case, defense counsel failed to object to the allegedly erroneous jury instruction. However, this Court will review the issue despite the failure to object, since defendant was convicted of the charged crime leading to a conclusion that the instruction was indeed prejudicial. See *People v Ray,* 43 Mich App 45; 204 NW2d 38 (1972), *People v Harmon,* 54 Mich App 393; 221 NW2d 176 (1974).

In *People v Hurst,* 396 Mich 1, 10; 238 NW2d 6 (1976), the Michigan Supreme Court considered the following instruction:

"If you find either of the defendants not guilty of the charge of manslaughter then you should proceed to determine whether that defendant not guilty of the

crime of manslaughter is guilty of the crime of assault and battery."

Although reversal was not predicated on this basis, the Court disapproved of the instruction for the following reasons:

"We agree with Hurst that this instruction improperly interfered with the jury's deliberations by requiring agreement of all twelve jurors to acquit the accused of the charged offense before considering a lesser offense.

"Under the judge's instruction, even if the jurors were 11 to 1 for acquittal and a significant number of jurors desired to discuss the possibility of convicting the defendant of a lesser offense, consideration of a lesser offense could not begin unless the one juror holding out for conviction were *[sic]* dissuaded from that view.

"The instruction is unrealistic and improper.

"Our disposition of this case does not require that we decide whether the giving of the instruction was reversible error. In the future, however, such instructions should be avoided." *Id.* (Footnote omitted.)

In the past, there were two lines of cases in this Court as to reversal for instructional errors which suggest an order of deliberations. One line of cases held that there was no reversible error unless the trial judge expressly told the jury that they had to reach a unanimous agreement of innocence on the principal offense before they could commence consideration of the lesser offenses. *People v Ronald L Johnson,* 74 Mich App 250; 253 NW2d 722 (1977), *People v Shears,* 73 Mich App 683; 252 NW2d 563 (1977), *People v Erwin,* 70 Mich App 60; 245 NW2d 173 (1976), *People v Don Francisco Lopez,* 65 Mich App 653; 237 NW2d 599 (1975). The other line of cases holds that an instruction which does not expressly require unanimity is reversible if there

is "implied coercion". *People v Johnson,* 83 Mich App 1; 268 NW2d 259 (1978), *People v Summers,* 73 Mich App 411; 251 NW2d 311 (1977), *Harmon, supra.*

This split was recently resolved in *People v Mays,* 407 Mich 619, 621; 288 NW2d 207 (1980), where the trial judge gave the following instruction:

"The first lesser included offense which you may consider, *if you find the defendant not guilty of first-degree sexual conduct,* you may consider whether the prosecutor has proven beyond a reasonable doubt the elements of criminal sexual conduct in the second degree."

Defendant objected, and the Court agreed that the instruction was impliedly coercive and reversed defendant's conviction. The Court added the following reservation:

"It is not error to suggest an order of consideration of offenses. The jury probably should be reminded to consider the charged offense first and it probably would be helpful to suggest that consideration be given to offenses with a 'greater' number of elements before considering those with a 'lesser' number.

"In this respect an instruction will not be deemed erroneous unless the instruction or manner of giving it conveys the impression that there must be acquittal on one charge before consideration of another.[1]

---

"1 Instruction to this effect may be given:

" 'You should begin your deliberations by considering (the charged offense). Unless all of you agree to find the defendant guilty of (the charged offense), you may consider the other offenses upon which I have instructed you in the order in which the instructions were given. You may consider any of those offenses without having reached agreement concerning the defendant's guilt or innocence of any other of those offenses.'

"The foregoing instruction is suggested but is not mandatory. Another formulation consistent with this opinion or eschewing instruction on this subject is not error." *Id.,* 623.

We find that the instruction in the instant case is indistinguishable from the one considered reversibly erroneous by the Supreme Court in *Mays, supra,* and we must, therefore, reverse defendant's conviction and remand the case for a new trial.

We will now proceed to discuss several other issues raised by the defendant as they may recur on retrial.

The defendant contends that the trial court erred in denying defendant's motion to suppress evidence of his prior criminal record. After listening to the arguments at the hearing on the motion, the trial judge merely stated, without any elaboration, that the motion was denied.

As defendant was tried in June of 1978, the admission of evidence of his prior convictions for impeachment purposes is governed by MRE 609, which provides in pertinent part:

"(a) General rule. For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime shall be admitted if elicited from him or established by public record during cross-examination but only if

"(1) the crime was punishable by death or imprisonment in excess of one year under the law under which he was convicted, or the crime involved theft, dishonesty or false statement, regardless of the punishment, and

"(2) the court determines that the probative value of admitting this evidence on the issue of credibility outweighs its prejudicial effect."

MRE 609(a)(1) retains the rule set forth in *People v Jackson,* 391 Mich 323; 217 NW2d 22 (1974), which requires the trial court to recognize that it has the discretion to admit or exclude references to a defendant's prior convictions.

In *People v Crawford,* 83 Mich App 35, 38-39;

268 NW2d 275 (1978), this Court held that the *Jackson* rule envisioned a true exercise of discretion by balancing the competing factors involved. The Court set out the following criteria which were to be considered:

"The factors which the judge must weigh in making his determination include: (1) the nature of the prior offense (did it involve an offense which directly bears on credibility, such as perjury?), (2) whether it is for substantially the same conduct for which the defendant is on trial (are the offenses so closely related that the danger that the jury will consider the defendant a 'bad man' or infer that because he was previously convicted he likely committed this crime, and therefore create prejudice which outweighs the probative value on the issue of credibility?), and (3) the effect on the decisional process if the accused does not testify out of fear of impeachment by prior convictions (are there alternative means of presenting a defense which would not require the defendant's testimony, *i.e.,* can his side of the story be presented, or are there alternative, less prejudicial means of impeaching the defendant?)."

In *People v Joyner,* 93 Mich App 554, 560-561; 287 NW2d 286 (1979), this Court stated that in ruling on the admission of evidence of a defendant's prior convictions, the trial court should note its discretion and the factors underlying its decision on the record, or the record should specifically indicate its cognizance of the *Crawford* criteria.

We, therefore, caution the trial court that on retrial his ruling on the admission of evidence of defendant's prior convictions should contain the fact that he recognizes his discretion and has considered the *Crawford* criteria in reaching his decision.

The defendant also alleges that the trial court erred reversibly in admitting into evidence the

gun which was recovered subsequent to a warrant-less search of the motel room where defendant and Pegram were arrested. Defendant argues that the scope of the search violated the standard of *Chimel v California,* 395 US 752; 89 S Ct 2034; 23 L Ed 2d 685 (1969), and that, as the fruit of an illegal search and seizure, the gun should have been suppressed.

A warrantless search and seizure is unreasonable per se and violates the Fourth Amendment of the United States Constitution as well as art 1, § 11 of the state constitution unless it is shown to be within one of the exceptions to the warrant requirement. The people bear the burden of showing that an exception to the warrant requirement exists. *People v Reed,* 393 Mich 342, 362; 224 NW2d 867 (1975).

The facts surrounding the search and seizure in the instant case may be summarized as follows. Detroit Police Officer Harris and his crew spotted a car, which had allegedly been involved in an armed robbery, parked in front of the Town Motel at about 1:30 a.m. on February 9, 1978. When he looked through the window, Harris saw a box of bullets on the front seat of the car. Harris spoke with the manager of the motel, then proceeded to unit six. Harris and approximately five other officers entered the motel room after defendant opened the door. The defendant and Pegram were clad only in their underwear. Both the defendant and Pegram were placed under arrest for armed robbery and were told to dress. Harris noticed that the refrigerator had been moved from its position near the cabinet. When he went over and shined his flashlight into this space, he saw the barrel of a gun propped against some water pipes at the rear of the refrigerator. Harris retrieved the gun.

At that time, neither the defendant nor Pegram had been handcuffed. Pegram was standing two feet to his right, while the defendant was across the room.

The parameters of a search incident to an arrest as an exception to the warrant requirement were set forth in *Chimel, supra,* 763:

"There is ample justification, therefore, for a search of the arrestee's person and the area 'within his immediate control'—construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence.

"There is no comparable justification, however, for routinely searching any room other than that in which an arrest occurs—or, for that matter, for searching through all the desk drawers or other closed or concealed areas in that room itself. Such searches, in the absence of well-recognized exceptions, may be made only under the authority of a search warrant." (Footnote omitted.)

We find that the search and seizure in the instant case fits within the scope of the exception in *Chimel.* Codefendant Pegram was only two feet away from Harris and had not been handcuffed so that the gun behind the refrigerator could reasonably be viewed as being within her immediate control. Therefore, the trial court did not err in denying defendant's motion to suppress the gun.

We find that the other issues raised by the defendant are without merit and decline to discuss them in view of the fact that there will be a new trial.

Reversed and remanded for a new trial.

Bronson, J. *(concurring).* I agree that, under the decisions of our Supreme Court, the defendant

must be granted a new trial. I am compelled to write separately, however, to underscore the terrible nature of the murder with which defendant is charged. The facts of this case present a killing that is exceedingly brutal, even in an age of brutality. One can only guess at what may have motivated the killers to perpetrate such a savage crime. While our system requires adherence to certain procedures in furtherance of fair trials for even the most cruel amongst us, society cannot, in the end, tolerate the sort of inhuman acts that occurred in the instant case.

It is a tribute to our system of justice and to our patience that this defendant, already once convicted of participating in these acts, is to be accorded a new trial in the quest for a fair determination of his guilt. And if that guilt is established in a trial free of reversible error, then our system must also insure his punishment.