PEOPLE v SMITH

Docket No. 51035. Submitted December 9, 1981, at Detroit.—Decided
July 21, 1982. Leave granted, 414 Mich 876.

Lee B. Smith was charged with receiving stolen property. Defendant moved in Recorder's Court of Detroit to suppress the evidence discovered by the police following the seizure of a truck trailer displaying license plates registered to the defendant. Craig S. Strong, J., granted defendant's motion to suppress. The prosecution appeals. *Held:*

1. Despite the retreat by the United States Supreme Court from the rule providing automatic standing to challenge searches and seizures by defendants who are charged with offenses which have as an essential element of the offense the possession of the seized evidence, that rule remains in effect in Michigan. Defendant, accordingly, had standing to challenge the search and seizure in question, he being charged with an offense which has as an element the possession of the seized evidence.

2. Since the missing VIN plate and improper license plate on the parked truck trailer was not sufficient to provide an unavoidable conclusion that the vehicle was stolen, the impoundment of the vehicle to determine its true identity and the subsequent search of that vehicle were improper.

R. M. Maher and Cynar, JJ., concurred but each wrote separately.

Affirmed.

---

References for Points in Headnotes

[1] 5 Am Jur 2d, Appeal and Error § 545.
[2] 29 Am Jur 2d, Evidence §§ 412, 418.
  Modern status of rule governing admissibility of evidence obtained by unlawful search and seizure. 50 ALR2d 531.
[3, 8] 68 Am Jur 2d, Search and Seizure § 6.
[4] 29 Am Jur 2d, Evidence §§ 416, 418.
[5] 4 Am Jur 2d, Appeal and Error § 702.
[6] 68 Am Jur 2d, Searches and Seizures § 60.
[7] 68 Am Jur 2d, Searches and Seizures §§ 41, 42.
[9] 68 Am Jur 2d, Searches and Seizures § 88.
  Search and seizure: observation of objects in "plain view." 29 L Ed 2d 1067.

OPINION BY D. C. RILEY, P.J.

1. APPEAL — ISSUES FIRST RAISED ON APPEAL.

The Court of Appeals, as a general rule, will not review issues raised for the first time on appeal; however, the rule is not inflexible and the Court of Appeals will review issues not raised before the trial court where such review is necessary for a proper determination of the case.

2. SEARCHES AND SEIZURES — CONSTITUTIONAL LAW — STANDING.

The resolution of the question of whether a person has standing to object to the introduction of evidence on the basis that it was seized in violation of the federal and Michigan constitutional right against illegal searches and seizures turns on the question of whether the seizure of the evidence infringed upon the person's rights, however such person may not vicariously raise the rights of others (US Const, Am IV; Const 1963, art 1, § 11).

3. SEARCHES AND SEIZURES — CONSTITUTIONAL LAW.

The Michigan Supreme Court has traditionally afforded defendants greater protection against unreasonable searches and seizures than the United States Supreme Court.

4. SEARCHES AND SEIZURES — CONSTITUTIONAL LAW — STANDING — AUTOMATIC STANDING.

Defendants in Michigan continue to have automatic standing to raise by a motion to suppress the question of the propriety of a search and seizure when charged with an offense which has as an essential element the possession of the seized evidence.

5. APPEAL — CRIMINAL LAW — EVIDENCE — SUPPRESSION OF EVIDENCE.

A trial court's ruling on a motion to suppress evidence will not be reversed unless it is clearly erroneous; a ruling is clearly erroneous where the reviewing court is firmly convinced that a mistake has been made.

6. SEARCHES AND SEIZURES — SEARCHES WITHOUT WARRANT — REASONABLENESS — CONSTITUTIONAL LAW.

A search and seizure without a warrant is unreasonable per se and violates the Constitutions of the United States and the State of Michigan unless it is shown to be within an exception to the warrant requirement, the burden of showing such an exception being on the state (US Const, Am IV; Const 1963, art 1, § 11).

7. SEARCHES AND SEIZURES — PROBABLE CAUSE.

Probable cause to make a search and seizure without a warrant exists where the facts and circumstances allow a man of reasonable caution to believe that an offense has been or is being committed.

CONCURRENCE BY R. M. MAHER, J.

8. SEARCHES AND SEIZURES — CONSTITUTIONAL LAW — STATE COURT ENFORCEMENT.

*The present membership of the United States Supreme Court has persistently manifested an attitude of callous indifference toward enforcement of the Fourth Amendment, consequently, state courts have the duty to halt the steady erosion of this bulwark against tyranny.*

CONCURRENCE BY CYNAR, J.

9. SEARCHES AND SEIZURES — PLAIN VIEW DOCTRINE.

*The plain view exception to the requirement that searches and seizures shall be made only pursuant to a search warrant is inapplicable where the property seized is not contraband or clearly incriminating at the time of the seizure.*

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Edward Reilly Wilson,* Principal Attorney, Appeals, and *Timothy A. Baughman,* Assistant Prosecuting Attorney, for the people.

*Warren D. Bracy,* for defendant.

Before: D. C. RILEY, P.J., and R. M. MAHER and CYNAR, JJ.

D. C. RILEY, P.J. Defendant was charged with receiving stolen property. MCL 750.535; MSA 28.803. At an evidentiary hearing, the trial court granted defendant's motion to suppress the evidence discovered by the police as a result of the seizure of a trailer displaying license plates regis-

tered to the defendant. The people appeal as of right.

On November 14, 1979, a Federal Bureau of Investigation (FBI) agent, a Michigan State police officer (trooper), and a Wayne County prosecutor investigator (investigator) went to 18883 Gainsborough, the residence of an associate of the defendant. The purpose of the visit was to investigate a shipment of stolen vehicle transmissions which had been delivered to Dallas, Texas. The investigator had received information that the transmissions had been delivered by two trucks; a black Kenworth and a red and white Peterbilt, both of which were pulling new, clean, silver-in-color trailers. Payment for the transmissions was by four checks made payable to defendant and his associate.

After the officers unsuccessfully attempted to locate defendant and his associate at the Gainsborough address, they drove away. Upon reaching the intersection of Avon and Grand River Avenue, approximately two blocks from the Gainsborough address, two tractors and trailers were spotted which fit the description of those used to deliver the stolen items. The Kenworth tractor was attached to one of the trailers (hereinafter, trailer #2). The Peterbilt tractor was parked directly in front of, but not attached to, the other trailer (hereinafter, trailer #1). While trailer #2 was in fact owned by defendant, trailer #1 was later found to be stolen and the charge against defendant involves only trailer #1.

A radio check was made as to the registration of the license plate on trailer #1. The plate was registered in defendant's name to a 1978 Fruehauf trailer bearing the same vehicle registration number (VIN) attached to trailer #2. The officers

observed that the VIN plate which should have been located on the left front of trailer #1 had been removed.

The investigator went to a police station in an unsuccessful attempt to contact someone from the commercial auto theft section who would know the location of the hidden or secret VIN. He then called the Fruehauf manufacturer to determine the number's location. Within an hour or an hour and one-half, he returned to the parking lot where the state trooper had remained. They were unable to locate the VIN in the location described by the alleged manufacturer. Comparing the physical appearance of trailer #2, a confirmed Fruehauf trailer, and trailer #1, the investigator concluded that trailer #1 was not a Fruehauf trailer. It was later determined that trailer #1 was manufactured by Trailmobile and the hidden VIN was in a different location than Fruehauf's. A tow truck was called and, upon its arrival within one and one-half hours, trailer #1 was removed to the police pound. Its true identity was established and it was determined that trailer #1 had been stolen.

The prosecutor appeals after the trial court granted defendant's motion to suppress this evidence. The people's first argument on appeal is that the defendant does not have a reasonable expectation of privacy in the stolen trailer such that he has standing to object to its seizure.

As a general rule, this Court will not review an issue raised for the first time on appeal. See *People v Obadele,* 58 Mich App 139, 142, fn 2; 227 NW2d 259 (1975). However, this rule is not inflexible and, where consideration of a claim not previously raised is necessary to a proper determination of the case, the issue will be considered. *People v Harris,* 95 Mich App 507, 509; 291 NW2d 97

(1980). In the present case, the prosecutor raises, for the first time, the issue regarding defendant's standing to object to the seizure of the trailer.

Standing is legalese to denote the requirement that a party in a lawsuit have a sufficient personal interest in the outcome so that the case is fairly, fully, and vigorously litigated. "[W]hen standing is placed in issue in a case, the question is whether the person whose standing is challenged is a proper party to request an adjudication of a particular issue." *Flast v Cohen,* 392 US 83, 99-100; 88 S Ct 1942; 20 L Ed 2d 947 (1968). Standing to object to the introduction of the evidence is based on the Fourth Amendment of the United States Constitution and Const 1963, art 1, § 11. The constitutional rights involved may only be asserted by the appropriate party and not vicariously. *Alderman v United States,* 394 US 165, 174; 89 S Ct 961; 22 L Ed 2d 176 (1969). Therefore, the defendant only has standing to contest the constitutionality of the seizure of the trailer if his rights were infringed upon.

There are three major federal cases which must be examined when a criminal defendant's standing to object to the introduction of evidence is in issue: *Jones v United States,* 362 US 257; 80 S Ct 725; 4 L Ed 2d 697 (1960); *Rakas v Illinois,* 439 US 128; 99 S Ct 421; 58 L Ed 2d 387 (1978); and *United States v Salvucci,* 448 US 83; 100 S Ct 2547; 65 L Ed 2d 619 (1980). *Jones* laid down two separate bases upon which to predicate standing. That Court wrote "that anyone legitimately on premises where a search occurs may challenge its legality by way of a motion to suppress, when its fruits are proposed to be used against him". 362 US 267. The second basis created in *Jones* became known as "automatic standing". This phrase embodies the

rule that a defendant has standing to contest a search or seizure whenever the offense for which he is charged has as an essential element possession of the seized evidence at the time of the challenged search and seizure.

The *Jones* rule granting standing for anyone legitimately on the premises at the time of the search and seizure was struck down in *Rakas, supra,* 142. This half of the *Jones* case was replaced with a standard which considers whether the party had a legitimate expectation of privacy in the searched or seized item. *Rakas, supra,* 143.

The automatic standing rule of *Jones* was reevaluated by the United States Supreme Court in *Salvucci.* Justice Rehnquist wrote for the majority stating: "Today we hold that defendants charged with crimes of possession may only claim the benefits of the exclusionary rule if their own Fourth Amendment rights have in fact been violated. The automatic standing rule of *Jones v United States, supra,* is therefore overruled." *Salvucci, supra,* 85. The *Salvucci* majority requires a factual finding that the party opposing the search have a legitimate expectation of privacy in the area searched. *Id.,* 92.

In the case at bar, the prosecutor argues that the defendant does not have standing to object to the introduction of the evidence, as he did not have a legitimate expectation of privacy in the stolen trailer while it was parked on the lot. Defendant notes that *Rakas* and *Salvucci* are not binding on Michigan courts and, therefore, he has standing because he is charged with a crime where possession of the goods is an essential element. This Court is faced for the first time with deciding

whether or not the automatic standing rule is still viable in Michigan after *Salvucci.*[1]

Other states which have considered this issue have split in their adoption of *Salvucci.* In *State v Hutchinson,* 404 So 2d 361 (F'la App, 1981), the Court reviewed the history of search-and-seizure law in that state and concluded that Florida courts must follow the principles announced in *Salvucci.* However, the Supreme Court of New Hampshire, in *State v Settle,* — NH —; — A2d — (1982), held that the automatic standing rule was still applicable in New Hampshire after *Salvucci.*

New Hampshire has decided to give defendants greater protection from unreasonable searches and seizures than the United States Supreme Court. As was noted in *People v Nabers,* 103 Mich App 354, 375; 303 NW2d 205 (1981):

"The Michigan Supreme Court has traditionally afforded defendants greater protection against unreasonable searches and seizures than the United States Supreme Court. See *People v Beavers,* 393 Mich 554; 227 NW2d 511 (1975), *cert den* 423 US 878; 96 S Ct 152; 46 L Ed 2d 111 (1975) (imposing higher Michigan standard relative to electronic surveillance); *People v Margelis,* 217 Mich 423; 186 NW 488 (1922) (applying the exclusionary rule prior to the time it was mandated by *Mapp v Ohio,* 367 US 643; 81 S Ct 1684; 6 L Ed 2d 1081 [1961])."

Const 1963, art 1, § 11, provides in part: "The person, houses, papers and *possessions* of every person shall be free from unreasonable searches

---

[1] The following Michigan cases cite *United States v Salvucci,* 448 US 83; 100 S Ct 2547; 65 L Ed 2d 619 (1980), but do not expressly address this issue.

*People v Kramer,* 108 Mich App 240, 247; 310 NW2d 347 (1981); *People v Ward,* 107 Mich App 38, 57; 308 NW2d 664 (1981); *People v Nabers,* 103 Mich App 354, 374, fn 10; 303 NW2d 205 (1981); *People v Mack,* 100 Mich App 45, 47, fn 1; 298 NW2d 657 (1980).

and seizures." (Emphasis added.) The Fourth Amendment of the United States Constitution varies in that it provides in part that "the people be secure in their persons, houses, papers and effects" from unreasonable searches and seizures. The term "possession", rather than "effects", may be a basis for providing the state citizen greater protection under Const 1963, art 1, § 11, than under the Fourth Amendment.

Justices Marshall and Brennan dissented in *Salvucci,* noting that the majority concluded the rationale underpinning the automatic standing rule had been eroded but disagreeing with that conclusion. The rationale for the automatic standing rule was that a defendant charged with a possessory crime should not be forced with relinquishing his Fifth Amendment privilege against self incrimination when seeking suppression of evidence and asserting his Fourth Amendment claim. Justice Marshall reasoned that the cases following *Jones* do not provide a defendant with complete protection against the "self-incrimination dilemma". 448 US 96. We agree.

Judge, now Justice, LEVIN wrote in *People v Weaver,* 35 Mich App 504, 510; 192 NW2d 572 (1971), a pre-*Salvucci* case, that: "It is, therefore, clear that no distinction [regarding standing] can properly be made based on whether the defendant was lawfully in possession of the automobile that was searched." We reason that this holding would still be found to be good law by our Supreme Court under Const 1963, art 1, § 11. The automatic standing rule of *Jones,* this Court concludes, is still applicable in Michigan as it provides greater protection to the citizens of this state from unreasonable searches and seizures. Defendant, therefore, has standing to object to the introduction of the

evidence as he was charged with a crime of which an essential element is possession.

We now arrive at the people's substantive argument on appeal: the trial court clearly erred in suppressing the evidence and dismissing the case as the seizure of the trailer without a warrant was proper under the circumstances.

A trial court's ruling on a motion to suppress evidence will not be disturbed unless it is clearly erroneous. *People v Grimmett,* 97 Mich App 212; 293 NW2d 768 (1980). The trial court's ruling is clearly erroneous if this Court, as the reviewing Court, is left with the firm conviction that a mistake has been made. *People v Goss,* 89 Mich App 598, 601; 280 NW2d 608 (1979). We are not left with such a feeling and affirm the trial court for the reasons which follow.

A seizure, or search, without a warrant is unreasonable per se and violates the Fourth Amendment, as well as Const 1963, art 1, § 11, unless it is shown to be within one of the exceptions to the warrant requirement. *People v Whalen,* 390 Mich 672, 677; 213 NW2d 116 (1973); *People v Handley,* 101 Mich App 130, 141; 300 NW2d 502 (1980). The people bear the burden of showing that one of the exceptions is applicable. *People v Reed,* 393 Mich 342, 362; 224 NW2d 867 (1975).

The constitutional prohibition against unreasonable seizures requires an inquiry into whether there was probable cause for the seizure. A seizure by state officials without probable cause would be unreasonable and unconstitutional. However, if the officials had probable cause for the seizure, the second inquiry is whether a valid exception to the warrant requirement exists. See *People v Young,* 89 Mich App 753; 282 NW2d 211 (1979). To determine if the officials had probable cause, the court

examines the facts, circumstances, and information known to the officials at the time of the seizure and search. *People v Carpenter,* 69 Mich App 81, 83; 244 NW2d 338 (1976). Probable cause exists when the facts and circumstances allow a man of reasonable caution to believe that an offense has been or is being committed. *People v Rodriguez,* 83 Mich App 606, 609; 269 NW2d 199 (1978). The trial court in this case found the officers involved had probable cause and there is no reversible error in that determination.

The only exception to the warrant requirement that the parties argue on appeal is the plain view doctrine. This doctrine provides that objects in the plain view of an officer, observed by the officer from a place in which he has a lawful right to be, which are obviously incriminating evidence or contraband, may be seized legally without a warrant. *People v Dugan,* 102 Mich App 497, 503-504; 302 NW2d 209 (1980).

The trial court found probable cause and the parties herein agree that the officials were legally in the parking lot. However, as the trial court stated:

"The plain view exception is inapplicable to the facts at hand since the officers had conceded that the purpose of the impounding was to determine the true identity of the vehicle, not because the vehicle was thought to contain contraband or to be a·stolen vehicle. The prosecution's contention that the observation of the missing VIN plate and improper license plate amounted to an unavoidable conclusion that the vehicle was stolen is unsound."

The officers' admission that they did not know if the trailer was evidence of a crime at the time they seized it defeats the plain view argument.

In summation then, the defendant had standing to move to suppress the evidence of trailer #1 and the seizure of the trailer without a warrant was unreasonable. Therefore, the trial court did not err in granting defendant's motion to suppress the evidence.

Affirmed.

R. M. MAHER, J. *(concurring).* I concur wholeheartedly in Judge RILEY's opinion. *Rakas v Illinois,* 439 US 128; 99 S Ct 421; 58 L Ed 2d 387 (1978), and *United States v Salvucci,* 488 US 83; 100 S Ct 2547; 65 L Ed 2d 619 (1980), are landmarks of unfortunate and backward jurisprudence. The present membership of the United States Supreme Court has persistently manifested an attitude of callous indifference toward enforcement of the Fourth Amendment; consequently, state courts have the duty to halt the steady erosion of this bulwark against tyranny.

I write separately in order to declare that I erred in joining Judge ALLEN's opinion in *People v Kramer,* 108 Mich App 240; 310 NW2d 347 (1981). In *Kramer,* the defendant contended that the trial court had erred by admitting evidence obtained in violation of the United States and Michigan Constitutions. The *Kramer* Court correctly concluded that the defendant had no standing under the federal constitution (as interpreted by the United States Supreme Court) to attack the admission of the evidence on Fourth Amendment grounds; however, the *Kramer* Court erroneously failed to address the defendant's claim that the evidence was inadmissible under the Michigan Constitution. The *Kramer* Court cited only federal cases in support of its holding that the defendant lacked standing to bring a Fourth Amendment claim.

To the extent that *Kramer* stands for the proposition that the "automatic standing" rule is no longer good law in Michigan, I hereby repudiate it.

CYNAR, J. *(concurring)*. I agree that the trial court should be affirmed because the plain view exception is inapplicable to the facts at hand. A warrant should have been obtained in this case because the property seized was not contraband or clearly incriminating at the time of the seizure.