PEOPLE v BARR

Docket No. 85275. Submitted October 17, 1986, at Detroit. Decided
     December 2, 1986.

John Henry Barr was convicted of burning real property, follow-
     ing a jury trial in Detroit Recorder's Court, Joseph A. Gillis, J.
     The property lost in the fire was a building which housed
     defendant's business, the Lyndon Lunch. Defendant appealed,
     raising several issues.

The Court of Appeals *held:*

1. The trial court did not abuse its discretion by admitting
into evidence the testimony of a fire department investigator
regarding his expert opinion as to the method by which the fire
was set and as to how long it would have taken to set the fire.
The fire department investigator was an expert in the area of
arson investigation, a field where knowledge belongs more to
experts than to the common man, and the subject of his
testimony required or was subject to analysis by a person in the
investigator's field of expertise.

2. The affidavit submitted in support of the warrant to search
defendant's home established probable cause to believe that
arson had been committed and that probative evidence would
be found at defendant's home. The trial court, therefore, did
not err in denying defendant's motion to suppress evidence on
the basis that the affidavit was deficient.

3. Photographs of defendant's own paintings, which were
taken at the time the search warrant was executed and later
introduced as exhibits at trial to prove that defendant had
removed his paintings displayed at the Lyndon Lunch in antici-
pation of the fire, were not authorized under the search war-
rant. However, defendant did not raise this issue at the trial

REFERENCES

Am Jur 2d, Appeal and Error §§ 78 *et seq.;* 545 *et seq.;* 797 *et seq.*

Am Jur 2d, Expert and Opinion Evidence §§ 24 *et seq.*

Am Jur 2d, Searches and Seizures §§ 35-41.

Admissibility of expert testimony as to modus operandi of crime—
     modern cases. 31 ALR4th 798.

See also the annotations in the Index to Annotations under Appeal
     and Error; Searches and Seizures.

court level and the photographs were not decisive of the outcome of defendant's trial. Therefore, the Court of Appeals did not review the issue.

4. Defendant waived the issue of whether his preliminary examination was held within twelve days of arraignment, as required by statute, by failing to assert it at his preliminary examination.

5. The trial court did not err by allowing the prosecution to use a witness' prior inconsistent statement without a foundation establishing an inconsistency or lack of memory. The particular witness in question had testified at the preliminary examination that paintings were removed on the afternoon before the fire but had equivocated at trial, prompting the prosecution to cross-examine the witness by referring to the preliminary examination transcript. Even if the jury had found the witness' testimony at the preliminary examination to be credible, the fact that paintings were removed from the Lyndon Lunch would have had little probative value in determining defendant's guilt, in light of the fact that other paintings were left and were damaged or destroyed by the fire.

6. The trial court did not fail to instruct the jury on defendant's theory of the case.

7. The trial court did not err in failing to instruct the jury that the law presumes that a fire is caused by natural or accidental causes. Defendant did not request the instruction nor did he object when the trial court failed to give it. Furthermore, the omission of the instruction did not result in a miscarriage of justice.

8. The prosecution's closing arguments did not, as defendant argued, deny defendant a fair trial by appealing to the jury's civic duty to rid the community of arsonists, by referring to facts not in evidence, or by shifting the burden of proof to defendant.

9. The great weight of the evidence supported defendant's conviction. Therefore, the trial court did not err in denying defendant's motion for a new trial.

10. Defendant was not denied effective assistance of counsel by any of his attorney's actions or failure to take action at trial concerning some of the issues discussed above.

Affirmed.

1. EVIDENCE — EXPERT TESTIMONY — RULES OF EVIDENCE.
   Three criteria must be satisfied for testimony to be admitted as expert testimony: (1) the witness must be an expert; (2) there must be facts in evidence which require or are subject to expert

analysis; and (3) the knowledge of the expert must be in a field where knowledge belongs more to experts than to the common man (MRE 702).

2. SEARCHES AND SEIZURES — PROBABLE CAUSE.

Probable cause is required to support the issuance of a search warrant under both the United States and Michigan Constitutions; the task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place (US Const, Am IV; Const 1963, art 1, § 11).

3. CRIMINAL LAW — PRELIMINARY EXAMINATIONS — PRESERVING QUESTION — APPEAL.

Objections based on errors or irregularities at a preliminary examination are waived unless raised before trial.

4. EVIDENCE — APPEAL.

Error may not be predicated upon a trial court's ruling which admits or excludes evidence unless a substantial right of the party is affected and the specific ground for the objection is stated on the record (MRE 103[a]).

5. APPEAL — CRIMINAL LAW — JURY INSTRUCTIONS — PRESERVING QUESTION.

A verdict will not be set aside on appeal on the basis of an alleged error in the trial court's instructions to the jury, when no objection to the alleged error is made before the jury retires to deliberate, unless such alleged error has resulted in a miscarriage of justice (MCL 769.26; MSA 28.1096; MCR 2.516[C]).

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *John D. O'Hair,* Prosecuting Attorney, *Timothy A. Baughman,* Chief of Criminal Division Research, Training and Appeals, and *Andrea L. Solak,* Assistant Prosecuting Attorney, for the people.

*Thomas A. Ricca,* for defendant.

Before: WAHLS, P.J., and R. B. BURNS and M. WARSHAWSKY,* JJ.

PER CURIAM. Defendant was convicted by a jury of burning real property, MCL 750.73; MSA 28.268. He appeals and we affirm.

Malcom Moore was eleven years old and lived across the street from the Lyndon Lunch. He had worked for the defendant passing out handbills for the restaurant.

On March 19, 1984, at 4:00 P.M., Moore was standing in the doorway of his home. He observed two men at the rear of the Lyndon Lunch. The men were throwing two gas cans into the back door of the restaurant. After leaving the restaurant, the two men went to the alley, then to a car parked on the next block. Moore described the two men as being about forty-five and eighteen years of age. Both were white. The older, taller man had a beard and wore a brown jacket and green slacks. The younger, shorter man wore jeans and a black leather coat. Moore was not wearing his glasses at the time and could not say whether the older man was defendant.

After observing the incident, Moore told his sister, Anthia, to call the fire department. Anthia called the operator who then called the fire department.

Detroit firefighters arrived at the Lyndon Lunch, located at 8000 Lyndon in the City of Detroit, between 4:00 and 4:15 P.M. They found the front door locked and all of the windows of the building secured. However, both the outside and inside rear doors of the building were open.

About six feet inside the building, a firefighter found a burning gasoline can and very heavy smoke. A second burning gasoline can was found

---

* Circuit judge, sitting on the Court of Appeals by assignment.

farther inside the building. A number of other fires were burning in the walls of the restaurant. All the fires were extinguished by 5:15 P.M.

Lieutenant John Bozich, an investigator for the Detroit Fire Department, arrived at the Lyndon Lunch sometime before the fire was extinguished. Bozich first noted a strong odor of gasoline from the interior of the building. Inside, he observed fifteen separate points of origin of the fire. The majority of those were holes broken into the plaster walls, into which gasoline-soaked newspapers had been inserted. In other areas, gasoline had simply been poured over booths and tables of the restaurant, then ignited. Over defense counsel's objections, Bozich testified that it would have taken twenty to twenty-five minutes to set the fire.

Lieutenant Larry Crowder, also an arson investigator for the Detroit Fire Department, arrived at the Lyndon Lunch with his partner, John Bozich. Crowder spoke with defendant, the owner of the Lyndon Lunch, while his partner investigated the building. According to Crowder, defendant was wearing a brown, three-quarter-length coat and green pants. Defendant's son, Jeffrey Barr, was wearing a black jacket, jeans and black shoes. Crowder testified that he also interviewed Malcom Moore and found that Moore's clothing description of the two men who threw the gas cans into the building matched that of defendant and his son.

Sam Pernicano, a real estate broker, testified that he had handled the sale of the Lyndon Lunch from Berman to defendant in 1982. The purchase price was $72,000 to $75,000. Pernicano further testified that he had been attempting to sell the Lyndon Lunch for defendant at the time of the fire. During the previous six months, the best offer that Pernicano obtained for the property was $57,000. However, Pernicano denied that the value

of the property had significantly declined, explaining that it was a "good money-maker."

On appeal, defendant raises several issues.

I. DID THE TRIAL COURT ERR IN ALLOWING THE OPINION TESTIMONY OF LIEUTENANT JOHN BOZICH AS TO THE TIME AND METHOD USED TO SET THE FIRE AT THE LYNDON LUNCH?

In the course of trial, Lieutenant John Bozich of the Detroit Fire Department gave extensive testimony. Bozich testified that he had been employed by the Detroit Fire Department for the past eighteen and one-half years. For the previous seven and one-half years, he had worked in the arson section of the department. Bozich testified that he had extensive training in arson investigation, both on the streets and in the classroom. Bozich's qualifications as an expert in arson investigation were not seriously disputed and were accepted by the trial court. However, defendant did object to the scope of Bozich's opinion testimony, both at a hearing for a motion in limine and at the time of trial. Specifically, defendant objected to Bozich's testimony regarding the time it would take to punch the holes in the walls, soak the newspapers with gasoline, push them into the walls, light the fires and exit the building. Bozich testified that it would take about twenty minutes for one person to complete those acts and about twenty-five minutes for two persons, since there would be communication problems in the latter case. Defendant argues that Bozich was not qualified to conduct a "time-and-motion study." Defendant also argues that Bozich's testimony as to the type of tool used and the number of persons involved was based upon facts not in evidence.

This Court has held:

The admission of expert testimony is governed by MRE 702. The rule contains three prerequisites which must be satisfied before the witness may testify: (1) the witness must be an expert; (2) there must be facts in evidence which require or are subject to expert analysis; and (3) the knowledge of the expert must be in a field where knowledge belongs more to experts than to the common man. *Syrowik v Detroit,* 119 Mich App 343, 348; 326 NW2d 507 (1982); *O'Dowd v Linehan,* 385 Mich 491; 189 NW2d 333 (1971). [*Cook v Detroit,* 125 Mich App 724, 735; 337 NW2d 277 (1983).]

Whether witnesses are sufficiently qualified to render opinions rests within the sound discretion of the trial court and that court's decision will only be reversed for an abuse of discretion. *Dybata v Kistler,* 140 Mich App 65; 362 NW2d 891 (1985).

The trial court denied defendant's motion to suppress after reviewing MRE 702 to 705. Bozich did not testify at the motion hearing, but at trial he explained that his training and experience in arson investigation included starting home fires:

*Q.* [*Defense Counsel:*] Lieutenant. What I asked you was whether based upon your own experience you have ever stuffed paper in a hole in a wall?

*A.* [*John Bozich:*] Yes, I have. One of the benefits of my job is that we get to set fires a lot of times in homes, and we devise ways to set fires, and we often do it by setting newspapers within the wall to try and make it look like an electrical fire of some sort. We stuff papers around electrical circuit areas.

It seems rather doubtful that the common man has Bozich's experience in deliberately setting home fires. We find no abuse of discretion on the part of the trial court in admitting Bozich's testimony as to the method and time involved in setting the fire at the Lyndon Lunch.

## II. DID THE TRIAL COURT ERR SO AS TO REQUIRE REVERSAL BY FAILING TO CONDUCT A FULL EVIDENTIARY HEARING ON DEFENDANT'S MOTION TO SUPPRESS?

The trial court did not refuse to hold a "full" evidentiary hearing, but merely decided the matter on the evidence before it. Defendant offered no witnesses. The only evidence presented to the trial court was the preliminary examination transcript.

Defendant also argues that the evidence seized at his home must be suppressed because the affidavit supporting the search warrant did not establish probable cause. Probable cause is required to support the issuance of a search warrant under both Const 1963, art 1, § 11 and US Const, Am IV. The Michigan Constitution does not impose a higher standard of reasonableness for searches and seizures than that imposed by the Fourth Amendment to the United States Constitution. *People v Ragland,* 149 Mich App 277; 385 NW2d 772 (1986).

The United States Supreme Court has held that

> probable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules. [*Illinois v Gates,* 462 US 213, 232; 103 S Ct 2317; 76 L Ed 2d 527 (1983).]

The *Gates* Court further held that probable cause must be determined by the totality of the circumstances:

> The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay infor-

mation, there is a fair probability that contraband or evidence of a crime will be found in a particular place. [*Gates, supra,* p 238.]

Paragraph five of the affidavit relates that Lieutenants Bozich and Crowder had given "identical clothing descriptions as to coats and pants" as that given by Moore. Moore's clothing description of the two men is given in paragraph four as "brown three-quarter-length wool coat with green pants and black jacket (waist length) with jeans." A practical, common-sense interpretation of the affidavit is that Lieutenants Crowder and Bozich also described the men wearing a brown ¾-length wool coat with green pants and a waist length black jacket with jeans, respectively. Under *Gates, supra,* a practical, common-sense interpretation is sufficient.

The affidavit did establish probable cause to believe that the crime of arson had been committed and that probative evidence would be found at defendant's residence. The trial court did not err by refusing to suppress the evidence seized pursuant to the warrant.

Defendant also argues that the seizures conducted by the officers in defendant's home went beyond those authorized by the warrant.

The warrant obtained by the police for the search of defendant's home included the following items to be seized:

Keys for premises at 8000 Lyndon, Lyndon Lunch, business records, ledgers, or any records referring to business or premises of 8000 Lyndon, including list of employees; black ¾ length coat— or any clothing to include footwear with the odor of accelerant, any accelerant substances or materials.

While executing the warrant, Lieutenant Robert Hill, of the Detroit Police Department, observed a number of paintings which were apparently done by defendant. It is clear that the warrant did not direct a seizure of any paintings and it is conceded that the officers left the paintings in the home. However, Lieutenant Hill did photograph some of the paintings and his photographs were introduced as Exhibits 23 and 24. On appeal, defendant argues that the photographs constitute a "seizure" of the paintings in violation of the warrant.

It should first be noted that defendant did not raise this issue in the course of his pretrial motion to suppress. Indeed, defendant expressly stated that he was moving to suppress the evidence obtained in the search on the basis of a defective affidavit. In *People v Catey,* 135 Mich App 714, 722; 356 NW2d 241 (1984), lv den 422 Mich 940 (1985), it was explained:

> As a general rule, this Court will not review an issue raised for the first time on appeal. *People v Davis,* 122 Mich App 597; 333 NW2d 99 (1983); *People v Smith,* 118 Mich App 366; 325 NW2d 429 (1982). However, where an important constitutional question is raised regarding the admissibility of the evidence and is decisive of the outcome of the case, appellate review is appropriate. *People v Guy,* 118 Mich App 99; 324 NW2d 547 (1982); *People v Harris,* 95 Mich App 507; 291 NW2d 97 (1980).

The photographs of defendant's paintings were not decisive and, therefore, appellate review of this issue is foreclosed.

III. SHOULD DEFENDANT'S CONVICTION BE REVERSED FOR FAILURE TO HOLD THE PRELIMINARY EXAMINATION WITHIN TWELVE DAYS OF THE ARRAIGNMENT AS REQUIRED UNDER MCL 766.4; MSA 28.922?

Michigan's Code of Criminal Procedure provides in part:

> The magistrate before whom any person is brought on a charge of having committed a felony shall set a day for a preliminary examination not exceeding 12 days thereafter, at which time a magistrate shall examine the complainant and the witnesses in support of the prosecution, on oath in the presence of the accused, in regard to the offense charged and in regard to any other matters connected with the charge which the magistrate considers pertinent. [MCL 766.4; MSA 28.922.]

Defendant was arraigned on June 13, 1984, at which time a preliminary examination was set for June 21, 1984. The preliminary examination was conducted for about an hour on June 21, but adjourned until August 13, 1984. The reason for the adjournment is not entirely clear, but appears to have involved some problem with the court's docket.

The defendant did not raise the issue of the twelve-day rule in the course of his preliminary examination. This Court has previously held:

> Generally, any objection based on errors or irregularities at the examination must be raised when the opportunity first arises. Michigan law requires that these objections be made before trial and that a failure to object in a timely manner constitutes a waiver of the claimed error. *People v Sutton,* 36 Mich App 604; 194 NW2d 3 (1971), *People v Childrey,* 65 Mich App 276; 237 NW2d 288 (1975). [*People v Lawrence Johnson,* 111 Mich App 383, 386-387; 314 NW2d 631 (1981), lv den 414 Mich 949 (1982).]

Defendant waived the issue of the twelve-day rule by failing to assert it at his preliminary examination.

IV. DID THE TRIAL COURT ERR SO AS TO REQUIRE
REVERSAL BY ALLOWING THE USE OF A WITNESS'
PRIOR STATEMENT WITHOUT A FOUNDATION ESTAB-
LISHING AN INCONSISTENCY OR LACK OF MEMORY?

Several witnesses testified that defendant fre-
quently brought his paintings into the Lyndon
Lunch to display them, and that the paintings
were changed from time to time. Apparently in an
attempt to show that defendant anticipated the
fire, the prosecution sought to obtain testimony
from the Lyndon Lunch's former dishwasher that
defendant removed two particularly valued paint-
ings during the afternoon preceding the fire. The
trial court then allowed the witness to "refresh"
his memory with the preliminary examination
transcript over the objection of defense counsel.
The witness stated that his memory had been
refreshed, but again stated that the paintings were
there during the day of the fire. The assistant
prosecutor then proceeded to cross-examine the
witness with the preliminary examination tran-
script, and eventually succeeded in obtaining some
equivocal testimony that the paintings were re-
moved on the afternoon before the fire.

Defendant did not specify his objection at the
time of trial. Under MRE 103(a), error may not be
predicated on an evidentiary ruling unless a sub-
stantial right of the party is affected and the
specific ground for the objection is stated on the
record. Even if the jury found the preliminary
examination testimony credible and, therefore, as-
sumed defendant took the paintings from the res-
taurant before the fire, that fact would have little
probative value in determining his guilt. That is
particularly true in view of the undisputed fact
that a number of defendant's paintings were left

in the restaurant and were damaged or destroyed by the fire. Any error would have been harmless.

### V. DID THE TRIAL COURT ERR BY FAILING TO INSTRUCT THE JURY ON DEFENDANT'S THEORY OF THE CASE?

According to defendant, that theory was that "some person other than Mr. Barr committed the offense charged." In the course of its instructions, the trial court stated:

> Evidence has been introduced that the defendant was some distance away shortly after the crime charged here, therefore he could not have committed that crime.
> The prosecution has the duty of proving beyond a reasonable doubt that the defendant was present at the time and place of the crime charged.
> The defendant does not have the burden of proving he was somewhere else.
> You alone are the determiners of the facts in this case, and you are to make that determination from all the facts and circumstances shown by the evidence.
> If you have a reasonable doubt whether the defendant was present at the time and place of the crime charged, then you must find him not guilty.

We conclude that the trial court did instruct the jury on defendant's theory—such as it was.

### VI. DID THE TRIAL COURT ERR IN FAILING TO INSTRUCT THE JURY THAT THE LAW PRESUMES THAT A FIRE IS CAUSED BY NATURAL OR ACCIDENTAL CAUSES?

Defendant argues that the trial court erred in failing to give the following instructions:

> When there is a fire, the law assumes that it

had natural or accidental causes, and that it was not wilfully or maliciously set. The prosecution must overcome this assumption and establish by the evidence beyond a reasonable doubt that the [dwelling house/property] was [wilfully/wilfully and maliciously/wilfully or maliciously] set on fire and was not an accidental burning. [CJI 31:0:01]

Defendant did not request that instruction, nor did defendant object that the trial court failed to give the instruction. This Court has held:

When no objection is made to an alleged error in the instructions, a verdict will not be set aside on the basis of such error unless it has resulted in a miscarriage of justice. *People v Trammell,* 70 Mich App 351; 247 NW2d 311 (1976); MCL 769.26; MSA 28.1096; see also GCR 1963, 516.2 [now MCR 2.516(C)]. [*People v Federico,* 146 Mich App 776, 784-785; 381 NW2d 819 (1985).]

We find no error on this issue.

VII. DID THE TRIAL COURT ERR BY FAILING TO INSTRUCT THE JURY THAT THE PROSECUTION MUST NEGATE EVERY REASONABLE THEORY CONSISTENT WITH DEFENDANT'S INNOCENCE?

This Court has recently explained:

Defendant also argues that under *People v Davenport,* 39 Mich App 252, 256; 197 NW2d 521 (1972), the prosecution is required to negate every reasonable theory consistent with defendant's innocence. On this issue our Court is split. In *People v Edgar,* 75 Mich App 467, 474; 255 NW2d 648 (1977), this author wrote that it is sufficient if the prosecution proves its own theory beyond a reasonable doubt in the fact of whatever contradictory evidence the defense may produce. The great majority of recent panels of this Court have followed *Edgar. People v Perry,* 114 Mich App 462, 466; 319

NW2d 559 (1982); *People v Kramer,* 108 Mich App 240, 250; 310 NW2d 347 (1981); *People v Doran,* 100 Mich App 795, 798-799; 300 NW2d 415 (1980); *People v Walker,* 93 Mich App 189, 195; 285 NW2d 812 (1979); *People v Richardson,* 139 Mich App 622, 625-626; 362 NW2d 853 (1984). [*People v Frank Johnson,* 146 Mich App 429, 436; 381 NW2d 740 (1985).]

We find no error on this issue.

VIII. WAS DEFENDANT DENIED A FAIR TRIAL BY THE PROSECUTION'S APPEAL TO THE JURY'S CIVIC DUTY AND BY THE PROSECUTION'S REFERENCE TO FACTS NOT IN EVIDENCE?

The closing arguments of the prosecution included no impropriety which could not have been cured by a timely objection.

IX. WAS DEFENDANT DENIED A FAIR TRIAL BY THE PROSECUTION'S ATTEMPT TO SHIFT THE BURDEN OF PROOF TO DEFENDANT IN ITS CLOSING ARGUMENT?

In his closing argument, the assistant prosecutor discussed the insurance coverage of the Lyndon Lunch at the time of the fire, testimony that business was good and other testimony that the sale value of the business had declined over the two years since it was purchased by defendant. In the course of that discussion, the assistant prosecutor noted that there was no evidence as to gross receipts. Defendant argues that the prosecution was attempting to shift the burden of proof by pointing out that there was no evidence as to the gross receipts generated by the Lyndon Lunch.

Appraisal of the value of business is a complex matter. The prosecution was pointing that out in arguing that evidence of gross receipts was absent. Thus, the prosecution was rebutting an anticipated

argument on the part of defendant that there was no motive for arson because the Lyndon Lunch was paying its bills. The prosecution then drove its point home by noting that the best offer for the business in its final year of operation was $57,000 —far less than the $72,000 purchase price paid by defendant.

To. the extent that the assistant prosecutor's argument is deemed to be improper, we must again note that defendant failed to interpose an objection. Appellate review is, therefore, foreclosed unless the prejudicial effect was so great that it could not have been cured by an appropriate instruction and failure to consider the issue would result in a miscarriage of justice. *People v Federico, supra.* The prosecution's argument, to the extent that it was improper, could have been cured with a timely objection. No basis for reversal is presented. *Id.*

### X. DID THE TRIAL COURT ABUSE ITS DISCRETION IN DENYING DEFENDANT'S MOTION FOR A NEW TRIAL?

The great weight of the evidence supports defendant's conviction.

### XI. SHOULD DEFENDANT'S CONVICTION BE REVERSED FOR INEFFECTIVE ASSISTANCE OF COUNSEL?

Defendant argues that defense counsel's failure to request key jury instructions and counsel's failure to object to the improper arguments of the prosecutor denied defendant a fair trial.

Here, defendant alleges both that several errors of trial counsel are serious mistakes and that they together rendered the performance of trial counsel deficient.

The first error alleged is the failure of trial

counsel to request CJI 4:2:01 and 4:2:02, which instructs the jury that the prosecution has the burden of negating every reasonable theory consistent with defendant's innocence. As discussed in Issue VII, this Court has rejected that rule in all but one recent decision. See *People v Frank Johnson, supra,* and cases cited therein. Thus, the trial court properly would have rejected such a request under MCR 2.516(D)(2). Defendant's theory, as best we can determine it, was simply that the prosecution had failed to carry its burden of proof. The jury *was* instructed carefully on the burden of proof.

Defendant next argues that trial counsel erred by failing to request that the trial court instruct on his theory of the case. Again, it must be noted that defendant's theory of the case was simply that the prosecution's evidence was insufficient and that someone else must, therefore, have set the fire. The trial court in fact instructed the jury that it must acquit if it found that the prosecution had failed to carry its burden. Thus, there was no error on the part of defense counsel.

Defendant also argues that trial counsel seriously erred by failing to object to that portion of the prosecution's closing argument which attempted to shift the burden of proof to defendant. As discussed in Issue IX, the prosecution's argument was merely an attempt to show that one single factor is insufficient to determine whether a business is profitable.

Finally, defendant argues that trial counsel seriously erred by failing to object to the prosecution's civic-duty argument. However, as discussed in Issue VIII, the prosecution's argument was proper in the context of both parties' closing arguments. The prosecution was merely pointing out the serious

nature of arson, not suggesting that the jury
should convict defendant in order to fight arson in
the community.

Affirmed.