THE PEOPLE v. SAMUEL MAUNAUSAU AND RICHARD MAUNAUSAU.

*Joint trial—Admissions of one defendant, in absence of the other, admissible —Same cannot be used against absent defendant—Error to fail to so instruct the jury—Failure to ask for such instruction, or to object to its omission, not a waiver—Refusal of witness to answer criminating question raises no inference for jury to consider—Proof, by independent testimony, of admission of witness of truth of fact sought to be shown, inadmissible to impeach or contradict him—Rebutting testimony—Discretion of court—Credit of witness cannot be assailed by direct testimony of commission of crime, unless convicted of same—Record of such conviction the only competent evidence.*

1. On the trial of two defendants for larceny, evidence of a conversation with each, in the absence of the other, tending to establish their guilt is admissible; but in such a case the court should instruct the jury that the admissions of one defendant should not be used against the other, and a failure to do so is error.

2. The failure of defendant's counsel to ask for such instruction, or to object to its omission from the charge given, will not cure the error.

3. It is now settled, in Michigan, that no inference can be drawn by the jury from the refusal of a witness to answer a question, because it may tend to criminate him: *Carne v. Litchfield*, 2 Mich. 340; *Foster v. People*, 18 Mich. 273.

4. On the trial the people showed that on the evening before the alleged larceny, a horse and cutter were found hitched by the side of the road, near the lumbering camp of complainant, and that the next morning the tracks of a man were followed from the camp to the spot where the horse had been hitched, along which track were drippings of molasses; the cutter was described by the witness, but no testimony given tending to show that it belonged to the defendants. Defendants introduced testimony tending to show that neither of them had a cutter, like the one described, and on rebuttal the people were allowed to introduce testimony tending to show the contrary.

   *Held,* that the admission of such testimony was in the discretion of the trial court.

5. Where a witness has declined to answer a question upon the ground that his answer would tend to criminate him, it is not competent to prove, by independent testimony, his admission, under oath, of the truth of the fact sought to be shown by the answer refused to be given, to impeach the witness.

6. Under our statute (How. Stat. § 7543), a conviction of crime no longer disqualifies a person from testifying, as a witness, in any cause, but such conviction may be shown for the purpose of affecting his credibility.

7. The credit of a witness cannot be assailed by the direct testimony of other witnesses to any criminality, or charge of criminality, unless he has been actually adjudged guilty, and this can only be shown by the record of such adjudication.

Exceptions before judgment to Isabella. (Hart, J.) Argued January 28, 1886. Decided February 10, 1886.

Larceny. Respondents were convicted. Reversed. The facts are stated in the opinion.

*Graves & Brown* and *Albert Trask*, for respondent :

The People elected to proceed against defendants jointly ; if tried separately, in the absence of proof of a conspiracy, statements of one defendant made in the absence and out of hearing of the other could not be received in evidence : Wharton's Crim. Ev. § 699 (8th ed.). The deposition of the witness, Navarre, offered to affect his credibility, was admissible. The character of a witness upon the stand is open to examination, and it has always been held proper to show that a witness has been convicted of a crime, and this may be done without the record, by the evidence of the witness himself : *Wilbur v. Flood*, 16 Mich. 40.

*Moses Taggart*, Attorney General, for the People :

Where several defendants are on trial, jointly, for a crime, the admissions of either one are admissible in evidence against the party making them : *People v. Arnold*, 46 Mich. 277 ; it is the right of a witness to refuse to answer a criminating question, and such refusal should not be used to discredit his testimony, and the counsel for the People cannot draw any inference from such refusal : *People v. Hall*, 48 Mich. 489 ; and there would seem to be no substantial difference in a case where a witness for the People claims the privilege. It is a privilege of the *witness*, not of the *parties : Pitcher v. People*, 16 Mich. 149 ; *People v. Arnold*, 40 Mich. 713 ; if it appears from the question itself that the answer might tend to criminate the witness, it is unnecessary for him to state that he refuses to answer for that reason. The general rule, is, that the presiding judge is to decide

whether the witness is entitled to such privilege, and when enough appears in the testimony to establish this fact, that is all that is necessary: Roscoe's Crim. Ev. § 138 (7th ed.). The general rule, is, that the answer of a witness as to a collateral or immaterial matter, is conclusive and cannot be contradicted: Roscoe's Crim. Ev. (7th ed. 102), see also 7 East 108, and 2 Camp. 637. The deposition of the witness, Navarre, offered for the purpose of affecting his credibility, as a witness, in this case, was properly excluded. It was taken on the examination of another person, for a distinct crime, and the witness could have been examined as to any matters that were proper cross-examination, and his answers would be held conclusive. The deposition does not fall within the rule admitting depositions as to matters material to the case on trial, or taken on a preliminary examination in the same case, which are admissible: *Lightfoot v. People*, 16 Mich. 507; *Hamilton v. People*, 29 Mich. 198; this was testimony on an immaterial point, not admissible if offered through a witness, for the credit of a witness cannot be impeached by direct testimony in support of any charge of criminality made against him, unless he has been convicted, which must appear by a record of the judgment: *Driscoll v. People*, 47 Mich. 413; the rebutting testimony on the part of the People, as to the use by defendants of a cutter, was admissible. This was not making out a new or different case, but merely cumulative and contradictory of testimony given for the defense. In any event the admission of such testimony was largely a matter of discretion with the trial judge, and error cannot be assigned upon his ruling: *D. & M. R. Co. v. Van Steinburg*, 17 Mich. 99.

Morse, J. The defendants were jointly informed against and jointly tried for grand larceny, in the circuit court for the county of Isabella, and found guilty of petit larceny. The articles alleged to have been stolen were twenty-five pounds of horseshoe nails, one hundred pounds of beef, three grub-hoes, two binding chains, and two axes. The jury found defendants guilty only of taking the horseshoe nails, of the value of six dollars.

One witness, James McJenkins, was allowed to testify to a conversation with the defendant Richard, in the absence of Samuel; and one Navarre was permitted to give evidence of a conversation with defendant Samuel, not in the presence of

Richard, both conversations having a tendency to show the guilt of defendants. These conversations were objected to by defendants' counsel because they were not in the presence and hearing of both defendants, and error is assigned upon the admission of the same.

These admissions were admissible. It would prevent the due administration of justice if, because one or more persons are jointly tried, the admissions or acts of any one of them could not be given in evidence against him, because the others, or one of them, were not present. The admission of Samuel should not have been used against Richard, nor the statement of Richard against Samuel. The court ought to have carefully instructed the jury upon this point, and explained to them the restriction in the use of the testimony so that the confession of one should not have prejudiced the other: *People v. Arnold*, 46 Mich. 277.

But the court did not do this, making no reference to the subject at all. Nor did the counsel for defendants request any such charge, or take any exception to the failure of the court to do so. It was manifestly error to receive the evidence, without cautioning the jury as aforesaid not to use the admission of one against the other. The reception of the evidence was proper in itself; the error lies in not instructing the jury as to its use.

The question now arises whether the counsel for respondents, by their failure to request such instruction, or to except to the failure of the court to do so without request, have waived their clients' rights in the premises. The objection made to the reception of this evidence, though not as clearly stated as it might have been, was evidently aimed at the injustice as well as the incompetency of using the declarations of one of these respondents against the other. It was the plain duty of the trial judge, when he received this testimony, or when he instructed the jury, to clearly point out the bearing of these admissions upon the vital issue of guilt or innocence, and to forbid, as far as he could, the use of the declarations of Richard to convict Samuel, or the admissions of Samuel to prejudice the case against Richard.

In a criminal case all doubts should be solved in favor of the accused, and in the present case, when the evidence of respondents' guilt depends almost entirely upon these declarations, we consider the neglect of the court to properly confine this testimony within its lawful limit, as an error too grave to be overlooked, and one entitling the defendants to a new trial.

The witness, Navarre, was asked, on cross-examination, if it was not a fact that last June he and one Fred. Cahoon had stolen some boots and other clothing and some feed from the lumber camp of C. K. Eddy, the same camp from which the articles alleged to be stolen, by respondents, were taken. Counsel for the People objected, as calling for testimony that would tend to criminate the witness.

"*The Court.* The question is one that the witness may refuse to answer if it tends to criminate him.

"*Counsel for the Defendants.* We concede that, your honor.

"*The Court.* If he refuses to answer, what good can the question do you? You cannot comment upon the refusal, as that would deprive the witness of the protection the law gives him.

"*Counsel for Defendants.* We claim we have a right to comment to this jury, on the fact that a witness refuses to answer a question because it may tend to criminate the witness, and except to the remark of the court that we have no such right."

Thereupon the witness refused to answer. Counsel for the defendants then asked him: " Do you refuse to answer because it may tend to criminate you?" The counsel for the People objected to the question, and the court sustained it, remarking that the question plainly implied that the answer would tend to criminate the witness. An exception was taken to this ruling. Defendants' counsel also requested the court to instruct the jury that, in determining the probability of the witness' telling the truth, they might take into consideration the fact that the witness had availed himself of his privilege, and refused to answer a question whether he ever committed larceny, upon the ground that

his answer might tend to criminate him.    The court refused
to so charge, and exception was taken.

If this were an open question, I should be inclined to hold
that this was error, for reasons not necessary to be stated.
As it is now settled in this State, that no inference can be
drawn from the refusal of a witness to answer a question
because it may tend to criminate him, on the ground that the
doctrine is necessary in order to make the privilege of any
value (*Carne v. Litchfield*, 2 Mich. 340; *Foster v. People*,
18 Mich. 273, citing *Rose v. Blakemore*, Ryan & M. 382,
and Lord Elden in *Lloyd v. Passingham*, 16 Ves. 64), my
brethren are also unanimous in the opinion that the action
of the circuit court in this respect was correct.

The prosecution, upon their main case, introduced evidence
to show that the evening before the larceny, a horse and
cutter were found hitched by the side of the road, about
thirty-five rods from Eddy's camp ; and that the next morn-
ing the tracks of one man were followed from the camp to
the spot where the horse and cutter had been hitched, and
along this track were drippings of molasses.    A description
of the cutter was given, but no evidence tending to show it
was the cutter of defendants, as appears by the record.    When
the defense took the case, testimony was introduced tending
to show that neither of defendants had that winter a cutter
like the one described.    Upon rebuttal the prosecution
introduced two witnesses, who gave evidence to the effect
that defendants did use such a cutter that winter.

The respondents complain that this proof belonged to the
primary case of the People ; that it was a manifest injustice
to them, as they could not get witnesses to meet it on the
trial, and was not part of the rebuttal testimony.    We are
not disposed to hold that it was not proper to be given in
rebuttal, inasmuch as the respondents had denied having such
a cutter ; but, at any rate, it was in the discretion of the
court to allow it.

The remaining error assigned relates to the refusal of the
court to admit in evidence, a deposition of the witness
Navarre, in another suit, in which he testified that, in com-

pany with one Fred. Cahoon, he committed a larceny of boots, clothing, and feed from this same camp. The object of this proposed testimony was to prove that, under oath, he had admitted his guilt in relation to the same transaction to which his attention was called by the question which he refused to answer. It was not admissible to impeach or contradict him, because he had answered no question in reference to it. But it is claimed that it could be introduced as independent evidence, to assail his credibility as a witness. Under our statute (How. Stat. § 7543) a conviction of crime no longer disqualifies a person from testifying as a witness in any cause, but the same may be shown for the purpose of drawing in question his credibility. Ordinarily, if not always, this must be shown by the record of the judgment, which judgment must be rendered by a court of competent jurisdiction. The verdict of a jury has been held not sufficient, as it may be set aside, or the judgment may be arrested on motion for that purpose. The admission of the guilt of the party, if oral, could not be proven, if objected to: 1 Greenl. Ev. § 375. Neither could his guilt be shown by his plea of "guilty," which had not been followed by judgment: *Regina v. Hinks*, 1 Denison Cr. Cas. 84.

By the evidence of Navarre, it appears that he was promised immunity from prosecution, if he would give evidence against Cahoon in the case where his deposition was taken; and the question arises if his testimony, given on oath, and reduced to writing, can be used to affect his credibility as a witness in the case at bar. It is certainly as solemn an admission as would be his recorded plea of guilty; but if nothing short of a judgment record can be proved against him, it would not be admissible.

This Court has repeatedly held, that the credit of a witness cannot be impeached or assailed by the direct testimony of other witnesses to any criminality, or charge of criminality, unless he has actually been adjudged guilty; and this can only be shown by a record of a judgment: *Driscoll v. People*, 47 Mich. 416; *Smith v. Brown*, 2 Mich. 162; *Dickinson v. Dustin*, 21 Mich. 561.

For the error in receiving the declarations of the respondents without proper caution to the jury, the judgment of the court below is reversed, and a new trial granted.

The other Justices concurred.