## PEOPLE v ANDREWS #1

1. CRIMINAL LAW—EVIDENCE—PRIOR OFFENSES—DEFENDANT'S TESTI-
   MONY—IMPEACHMENT.

   The general rule is that prior convictions and unrelated pending
   charges are not admissible as substantive evidence of a defend-
   ant's guilt except to impeach his credibility; if he does not
   testify there is no prior inconsistent evidence to be impeached.

2. CRIMINAL LAW—EVIDENCE—PRIOR OFFENSES—RES GESTAE.

   Evidence that is part of the res gestae of the crime at bar is an
   exception to the general rule that evidence of prior convictions
   and unrelated pending charges is not admissible except to
   impeach credibility.

3. CRIMINAL LAW—RES GESTAE—WORDS AND PHRASES.

   Res gestae are the circumstances, facts, and declarations which
   grow out of the main fact, are contemporaneous with it, and so
   illustrate and characterize the main facts and are necessary to
   exhibit the main fact in its proper effect.

4. CRIMINAL LAW—EVIDENCE—RES GESTAE—PRIOR OFFENSES.

   The testimony in a trial of breaking and entering with intent to
   commit larceny of an investigating police detective that prison
   clothing belonging to the defendant, a recent escapee, was
   found on the premises allegedly broken into was highly rele-
   vant for its probative value in establishing motive and intent
   and was part of the res gestae facts.

5. CRIMINAL LAW—EVIDENCE—RES GESTAE—INTENT—MOTIVE—AP-
   PEAL AND ERROR—JUDICIAL NOTICE.

   The Court of Appeals may take judicial notice of the fact that the
   first impulse of a prison inmate who escapes is to discard his
   prison attire and the obvious means is to break into nearby
   homes to acquire civilian attire; by eliciting that the defendant

REFERENCES FOR POINTS IN HEADNOTES
[1–4] 21 Am Jur 2d, Criminal Law § 118.
[5] 29 Am Jur 2d, Evidence §§ 715, 731.
[6] 21 Am Jur 2d, Criminal Law § 356.
[7] 21 Am Jur 2d, Criminal Law §§ 533, 545, 606.

had escaped only hours before the crime charged the people demonstrated his possible and likely motive and larcenous intent requisite to obtain a conviction of breaking and entering a structure with intent to commit a felony or larceny therein; such evidence falls squarely within the province of res gestae facts (MCLA 750.110).

6. CRIMINAL LAW—INSTRUCTIONS TO JURY—DEFENDANT TESTIFYING— INFERENCES.

Cautionary instructions given *sua sponte* to the jury that no adverse inferences were to be drawn from the defendant's failure to take the stand represent the court's commendable concern for the defendant's rights, should in no way work against the defendant's interests, and did not create any presumptions against him (MCLA 600.2159).

7. CRIMINAL LAW—SENTENCE—CREDIT FOR TIME SERVED—STATUTES.

Failure to allow a defendant statutory credit for time served from his arrest to sentencing was error; although his incarceration on an unrelated prior charge precluded admission to bail in any event, offenses committed by inmates, with the exception of prison escape, are covered by the statute which is remedial in nature and to be liberally construed (MCLA 769.116).

Appeal from Jackson, Charles J. Falahee, J. Submitted Division 2 March 5, 1974, at Lansing. (Docket No. 16113.) Decided April 29, 1974. Leave to appeal granted, and reversed *sua sponte* on issue of sentence credit, 392 Mich 775.

Elma V. Andrews was convicted of breaking and entering with intent to commit larceny. Defendant appeals. Affirmed, with sentence modified.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Bruce A. Barton,* Prosecuting Attorney, and *James M. Justin,* Assistant Prosecuting Attorney, for the people.

*Roger L. Wotila,* Assistant State Appellate Defender, for defendant.

Before: McGREGOR, P. J., and R. B. BURNS and R. L. SMITH,* JJ.

McGREGOR, P. J. Defendant was convicted of breaking and entering with intent to commit larceny, MCLA 750.110; MSA 28.305, was sentenced to 5-1/2 to 15 years in prison, and appeals as of right. The issues raised are procedural rather than substantive—at least, the defendant does not challenge the facts as insufficient to support his conviction.

Defendant contends that when a criminal defendant does not take the stand, it is reversible error for the prosecution to adduce during the trial the fact that the defendant was a prison escapee at the time of the alleged offense. The general rule is that prior convictions and unrelated pending charges are not admissible as substantive evidence of the defendant's guilt except in order to impeach his credibility. *People v Falkner*, 389 Mich 682; 209 NW2d 193 (1973); *People v Eddington*, 387 Mich 551; 198 NW2d 297 (1972). If defendant does not testify, there is no prior inconsistent testimony to be impeached. On the other hand, there is a high degree of probability that a jury will infer his guilt of the offense charged on the basis of his past record. The ordinary and best practice is consequently to exclude such testimony in these circumstances. *People v Dunn,* 46 Mich App 226; 208 NW2d 239 (1973). See also *People v McPherson,* 21 Mich App 385, 397–398; 175 NW2d 828 (1970). One exception is when these matters are part of the res gestae of the crime at bar. *People v McPherson,* 38 Mich App 534, 540–545; 197 NW2d 173 (1972).

---

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

A detective sergeant of the State Police who investigated this crime testified:

"*Q. (by Mr. Spray, People's attorney):* Detective Nystrom, I now show you People's proposed exhibit eleven, a box and its contents, and ask you if you've seen that before.

"*A.* Yes * * *

"*Q.* Where were these things found?

"*A.* These were found in the bedroom on the bedroom floor. The pants were wet up to about the knees; and, like I said, there is this prison number in the inside of the pants, which is common for prison clothing.

"I did make a check of this number—14910—and found it was registered to a William Hawley, an inmate at the prison, who was then and there at the Wing Farm.

\* \* \*

"*Q. (by Mr. Spray, continuing):* As a result of your investigation, did you check on anyone else from the prison system at that time in that area?

"*A.* Yes. I—an officer brought me out a flier, escape flier, from the prison on an inmate—

"*Mr. Boham (defense attorney, interrupting):* Objection.

"*A. (Continuing):*—that had escaped that morning—

\* \* \*

"*The Court:* Well, let's take the jury out for a few minutes, and we'll cover this out of the presence of the jury for a minute.

\* \* \*

"*The Court:* I don't know what you propose to—I'll allow you to go ahead with your questioning now to see what you're leading up to, Mr. Spray, and see if it's objectionable on a separate record here.

"*Mr. Spray (addressing the witness):* Detective Nystrom, did you—in the course of your investigation, were you aware of anyone else who had escaped, or was reported missing from the prison system at that time who might have worn those clothes?

*"The Witness:* Yes. Elma Vernon Andrews was reported missing at 6:30 a.m. on May the 16th, 1972, and—

\* \* \*

*"Mr. Spray:* Now, in the normal course of your investigations on this kind of a case, would you have—do you normally check the escapees, or the escape report?

*"The Witness:* Oh, yes, we certainly do. On any crime that's—reported to us, we check it against any possible recent escapes, and we have solved many crimes that way.

*"Mr. Spray:* Now, after—

*"Mr. Boham:* Objection.

*"Mr. Spray (continuing):*—after checking this report, did you—what did you do on the basis of checking this report in seeing that the defendant Elma Andrews had been reported missing from the prison system?

*"The Witness:* Well, I obtained a bunch of mug photos, and I later showed these to the three previous witnesses. That would be Mr. Bradley, Lois—uh—Wingen, or—Lois—Mrs. Kenneth Wielenga, and Mr. Osterhouse. I showed this group of mug pictures, and I have those with me also—six mug pictures—one of which is the same picture on this escape notice. Then I took the information from this notice of the name of the suspect, Elma Vernon Andrews, and his birth date, and I give this information to our latent print unit, so that they could pull his fingerprints that were on file and compare them with the prints that I—

*"Mr. Boham (interrupting):* Objection.

*"The Witness (continuing):*—that I had on the bottom of the cookie jar. It was only for that purpose that I used this flier, to get an idea who is the suspect on this crime.

\* \* \*

*"Mr. Spray:* Your Honor, I believe there has been previous testimony that these clothes as they appear in the photographs, were not in the home at the time the owner of the home left, but were there when he returned, and this testimony is offered solely to explain the presence of these clothes \* \* \* in the home.

* * *

"*The Court:* I realize the objection. I'm going to allow you here to go ahead. I'm going to allow you to question Detective Nystrom just as you have here off the record, or, on a separate record, I'll allow you to continue that type of questioning in front of the jury, and I'll overrule any objection in this regard by Mr. Boham, and, of course, his objection shows for the record, in the event that he wishes to preserve that. I'm sure he does.

"So, continue the questioning along that line, as you did here, I think we're going to be all right as far as I'm concerned."

These matters were then put on the record in the presence of the jury.

This testimony falls within the perimeters of the res gestae rule laid down in *People v McPherson, supra.*

"Res gestae are the circumstances, facts and declarations which grow out of the main fact, are contemporaneous with it, and * * * so illustrate and characterize the principal fact as to * * * render [them] necessary to exhibit [it] in its proper effect." *People v Kayne,* 268 Mich 186, 191–192; 255 NW 758 (1934) (citations omitted).

Among the primary characteristics of res gestae facts are their probative value in establishing either motive[1] or intent.[2] Detective Nystrom's testimony is highly relevant on both those grounds.

---

[1] *E.g., People v Andriacci,* 11 Mich App 482; 161 NW2d 435 (1968) (action to evade explaining facially felonious presence in broken-into shops is admissible in prosecution for breaking and entering).

[2] *Compare People v Cygan,* 229 Mich 172; 200 NW 967 (1924) (evidence that defendant shot other persons at the same time as complaining witness admissible in prosecution for assault with intent to kill as probative of intent), *with People v Dudley,* 131 Mich 261; 90 NW 1058 (1902) (evidence that defendant pointed a gun at other persons without firing it just prior to allegedly accidental shooting of complaining witness admissible in prosecution for careless use of a gun as probative of lack of malice).

This Court can take judicial notice of the fact that when an inmate escapes from prison, his first impulse is to ditch his prison garb in favor of civilian attire that will enable him to blend in with other people. The obvious means to do so, in the event that accomplices are not waiting outside the walls with a change of clothes, is to break into nearby homes to get hold of one. By eliciting the fact that the defendant had escaped from Jackson Prison only hours before the crime charged here took place, the people demonstrated his possible—and likely—motive for committing it. In addition, the offense is properly styled breaking and entering a structure "with intent to commit any felony or larceny therein". MCLA 750.110; MSA 28.305. It is a specific intent crime. Consequently, for the reasons just described, this testimony is most probative of the larcenous intent requisite to obtain a conviction. The evidence at bar falls squarely within the province of res gestae facts. Its admission is neither error nor an abuse of judicial discretion. Despite its high potential for being prejudicial to the defendant, it is extremely probative in the context of this case.

The defendant also contends that it was reversible error for the trial court *sua sponte* to give the jury a cautionary instruction that it could not draw any adverse inferences from the fact that the defendant did not take the stand.

The essence of the defendant's argument is that such *sua sponte* instructions amount to a comment or reference by the trial judge on the defendant's failure to testify in his own behalf in violation of MCLA 600.2159; MSA 27A.2159. The appellate defender makes a cogent argument for that position. The policy behind the statute is that "neglect to testify shall not create any presumption against

[the defendant]". To instruct the jury to that effect in the absence of request to do so represents commendable concern for the rights of the defendant and should in no way work against his interests. *People v Waters,* 16 Mich App 33, 36–37; 167 NW2d 487 (1969). There is no merit to this contention of the defendant. *People v Harris,* 52 Mich App 739; 218 NW2d 150 (1974).

Defendant further contends that it was error for the trial judge not to credit the defendant for the time served between his arrest and conviction.

MCLA 769.11b; MSA 28.1083(2) provides:

"Whenever any person is hereafter convicted of any crime within this state and has served any time in jail prior to sentencing because of being denied or unable to furnish bond for the offense of which he is convicted, the trial court in imposing sentence shall specifically grant credit against the sentence for such time served in jail prior to sentencing."

This statute is remedial in nature and is accordingly to be liberally construed. *People v Cohen,* 35 Mich App 706; 192 NW2d 652 (1971). Its purpose, usually, is to put an accused who cannot post bail due to his indigency on an equal status with his counterpart who can. *Bowen v Recorder's Court Judge,* 384 Mich 55; 179 NW2d 377 (1970); *People v Pruitt,* 23 Mich App 510, 513; 179 NW2d 22 (1970); *People v Chattaway,* 18 Mich App 538; 171 NW2d 801 (1969). The question here is its relevancy in the case of a defendant whose present incarceration on an unrelated prior charge precludes his admission to bail in any event.

With the sole exception of prison escape,[3] there

---

[3] One proffered reason for not granting credit for time served here is the deterrent effect rationale of MCLA 750.193; MSA 28.390:

"We consider that placing a premium on prison escape under the involved statute does result in 'absurd consequences'. It is apparent

is no reason to treat offenses committed by inmates incarcerated on unrelated charges any differently than offenses committed by those not so incarcerated. *People v Hall,* 19 Mich App 95; 172 NW2d 473 (1969). Such disparate treatment raises arguable and serious equal protection problems. It follows that the sentence imposed must be amended pursuant to GCR 1963, 820.1(7) to grant the defendant credit for the 157 days which he had served between arrest and conviction. *People v Lewis,* 42 Mich App 121; 201 NW2d 341 (1972).

Other errors alleged by defendant are not reversible.

Defendant's conviction is affirmed and the sentence is modified to grant credit for 157 days imprisonment served prior to conviction.

All concurred.

that to grant * * * credit from the date of * * * arraignment on the warrant for prison escape * * * would be an invitation to all inmates similarly circumstanced to attempt escape, then if apprehended and arraigned simply to indicate an inability to furnish bond. Automatically credit would of necessity be extended from the date of apprehension and arraignment to the date of sentencing for prison escape." *People v Pruitt, supra,* 23 Mich App 514.

To the same effect are *People v Passalacqua,* 48 Mich App 634; 211 NW2d 59 (1973); *People v Holibaugh* (Docket No. 13907, decided April 27, 1973 [unreported]); *People v Brooks,* 33 Mich App 297; 189 NW2d 816 (1971). Indeed, *Brooks* expressly refused to overrule *Pruitt* on this point.

Another suggested distinction between prison escape and other crimes is that with respect to the former, the sentence is mandatorily consecutive: *See People v Bachman,* 50 Mich App 682; 213 NW2d 800 (1973).