PEOPLE v HANDLEY (ON REMAND)

Docket No. 69162. Submitted January 21, 1983, at Lansing.—Decided June 4, 1984. Leave to appeal applied for.

Joseph Handley, Jr., was convicted by a jury in Detroit Recorder's Court of first-degree murder and possession of a firearm during the commission of a felony and was sentenced to a term of life imprisonment for the murder conviction and an additional two-year mandatory sentence for the felony-firearm conviction. He appealed and the Court of Appeals reversed and remanded for a new trial, finding that the trial court's jury instruction on lesser-included offenses was impliedly coercive in that it conveyed the impression that there must be acquittal on one charge before lesser-included offenses could be considered and that the trial court did not, as required, note recognition of its discretion or of the factors underlying its decision to deny defendant's motion to suppress his prior criminal record, 101 Mich App 130 (1980). The people applied for leave to appeal to the Supreme Court. The Supreme Court, in lieu of granting leave to appeal, reversed the judgment of the Court of Appeals and remanded the case to the Court of Appeals for further consideration of the remaining issues raised by the defendant in his appeal, 415 Mich 356 (1982). After consideration on remand, *held:*

1. The trial court's failure to positively indicate and identify its exercise of discretion in denying defendant's motion to suppress his previous criminal record constituted error.

2. The trial court did not err in allowing the use of evidence of defendant's previous criminal record even though defendant did not testify. The evidence, in the form of testimony of a witness, was admissible because it partially showed defendant's motive for murdering the victim.

3. The trial court erred in admitting into evidence testimony

REFERENCES FOR POINTS IN HEADNOTES
[1-4, 7, 8] 29 Am Jur 2d, Evidence §§ 320, 321, 327, 333.
[3] 29 Am Jur 2d, Evidence § 325.
[5] 21 Am Jur 2d, Criminal Law § 277.
    40 Am Jur 2d, Homicide § 190.
[6] 73 Am Jur 2d, Statutes § 392 *et seq.*
    79 Am Jur 2d, Weapons and Firearms §§ 5, 24.

of two police officers to the effect that they arrested defendant for armed robbery, not for murder. No evidence was ever presented to prove that such an armed robbery had occurred or that, if it had, defendant committed it. The prosecution was also allowed to speculate to the jury that the unproven armed robbery had formed the basis for the murder. The admission of this evidence, combined with the trial court's failure to acknowledge its discretion in denying defendant's motion to suppress evidence of his previous criminal record, constitutes reversible error.

4. The search of the room in which defendant was arrested and the seizure of the gun later admitted into evidence occurred incident to defendant's arrest within an area in his immediate control. Under such circumstances no warrant was required and the trial court did not err in denying defendant's motion to suppress the introduction of the gun into evidence.

5. The trial court sufficiently instructed the jury on the issue of premeditation.

6. Defendant's right not to be placed in double jeopardy was not violated by the fact that he was convicted of both first-degree murder and felony-firearm.

7. The felony-firearm statute does not violate the Michigan Constitution by amending other statutes by implication.

8. Defendant's right to confrontation was not violated when a defense witness who had testified favorably to defendant on direct examination expanded his story to reflect unfavorably on defendant on cross-examination. The testimony concerned statements made by an accomplice, in which she first admitted committing the murder herself and then later recanted and accused defendant of the murder. The testimony of the witness, a police officer, was properly admitted to impeach the accomplice. At retrial, if the same situation arises, the trial court must instruct the jury that this evidence may be used only for impeachment purposes and not as substantive evidence.

Reversed and remanded for a new trial.

CYNAR, J., concurred in the result, based only on the error involving the trial court's decision not to suppress defendant's prior record for impeachment purposes.

OPINION OF THE COURT

1. CRIMINAL LAW — IMPEACHMENT — PRIOR CONVICTIONS.

A trial court must exercise its discretion to exclude reference to a defendant's prior convictions when requested to do so; failure to

positively indicate and identify its exercise of discretion in ruling on a motion to suppress the evidence is error.

2. CRIMINAL LAW — IMPEACHMENT — PRIOR CONVICTIONS.

Evidence of a defendant's former convictions, which is generally inadmissible when the defendant does not testify, may be admissible if it is relevant and material to the issue being tried, despite the fact that the defendant does not testify.

3. CRIMINAL LAW — IMPEACHMENT — PRIOR CONVICTIONS — MOTIVE — RULES OF EVIDENCE.

Evidence tending to show that a defendant committed crimes other than those charged is generally inadmissible on the issue of the defendant's guilt or innocence because whatever probative value such evidence has is outweighed by the disadvantage of diverting the trier of fact from an objective appraisal of the defendant's guilt or innocence; however, evidence of motive which suggests the doing of the act charged is always admissible, and this is true even though such evidence shows or tends to show the commission of another crime (MRE 404b).

4. CRIMINAL LAW — IMPEACHMENT — PRIOR CRIMINAL ACTIVITY.

Evidence of a defendant's prior criminal activity is so inherently prejudicial that, even where it is relevant, its admission often requires reversal.

5. CRIMINAL LAW — FIRST-DEGREE MURDER — FELONY-FIREARM — DOUBLE JEOPARDY.

Being convicted of both first-degree murder and felony-firearm based upon a single act does not violate a defendant's right against double jeopardy.

6. CONSTITUTIONAL LAW — FELONY-FIREARM.

The felony-firearm statute does not violate the Michigan Constitution by amending other statutes by implication (Const 1963, art 4, § 25).

7. EVIDENCE — HEARSAY — IMPEACHMENT — RULES OF EVIDENCE.

The credibility of the declarant of a hearsay statement which has been admitted in evidence may be attacked, and if attacked may be supported, by any evidence which would be admissible for those purposes if the declarant had testified as a witness (MRE 806).

CONCURRENCE BY CYNAR, J.

8. CRIMINAL LAW — IMPEACHMENT — PRIOR CONVICTIONS.

*Failure of a trial court to positively indicate and identify its*

*exercise of discretion when ruling on a motion to suppress evidence of a defendant's prior convictions is error.*

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Edward Reilly Wilson,* Principal Attorney, Appeals, and *Anne B. Wetherholt,* Assistant Prosecuting Attorney, for the people.

*Robert E. Slameka,* for defendant on appeal.

(ON REMAND)

Before: R. M. MAHER, P.J., and BRONSON and CYNAR, JJ.

R. M. MAHER, P.J. On June 14, 1978, defendant was convicted after a jury trial of first-degree murder, MCL 750.316; MSA 28.548, and felony-firearm, MCL 750.227b; MSA 28.424(2), and was subsequently sentenced to life imprisonment. He appealed as of right. On October 24, 1980, this Court reversed his conviction. 101 Mich App 130; 300 NW2d 502 (1980). This Court's decision was eventually reversed by the Supreme Court and defendant's case was remanded to this Court so that we might "consider whether any of the defendant's remaining issues constitute reversible error". 415 Mich 356, 361; 329 NW2d 710 (1982).

Defendant was convicted of the murder of Ira Marie Hesterley. The full facts may be found in this Court's first opinion. Briefly, Hesterley's body was found in a deserted area near Leland and Russell streets in Detroit on February 8, 1978. She had been shot twice. Defendant's ring and watch were found nearby. Defendant was arrested with Caroline Pegram (who later pled guilty to second-degree murder, MCL 750.317; MSA 28.549, and

felony-firearm, MCL 750.227b; MSA 28.424[2])
later that night at a motel. Hesterley's car was
parked outside. Before the shooting, defendant,
Pegram, Hesterley, and Renee Smithson had been
living together.

After reviewing the record, we believe that two
errors combined to deny defendant a fair trial. The
first error involves the trial court's decision not to
suppress defendant's prior record for impeachment
purposes. The second error involves the use of
defendant's past criminal record at trial, even
though he did not testify.

Approximately a week before trial, defendant
requested that his prior convictions for armed
robbery and assault with intent to commit great
bodily harm less than murder be suppressed
should he testify. Defendant strongly intimated
that he would not testify if the trial court declined
to suppress the prior record. The trial court re-
sponded by saying, "Motion is denied". No other
opinion on this issue was ever rendered, and defen-
dant did not testify at trial.

In *People v West,* 408 Mich 332, 340; 291 NW2d
48 (1980), the Supreme Court ruled:

"The law in Michigan is clear that the trial judge
must recognize that he has the discretion to exclude
reference to prior convictions for impeachment pur-
poses. *Jackson, supra,* 391 Mich 336. When defendant
moves to exclude reference to the convictions, the trial
court 'must positively indicate and identify its exercise
of discretion'. *Cherry, supra.* In this case the words
'Motion *in limine* denied' do not comply with the dic-
tates of *Cherry* and *Jackson."*

The same error was later found to require reversal
in *People v Carner,* 117 Mich App 560, 573; 324
NW2d 78 (1982):

"On request, a trial judge must exercise his discretion in deciding whether to exclude reference to a prior conviction record. *People v Jackson,* 391 Mich 323; 217 NW2d 22 (1974). In order to comply with the rule in *Jackson,* the trial court must positively indicate and identify its exercise of discretion. *People v Cherry,* 393 Mich 261; 224 NW2d 286 (1974). Although counsel for both sides here argued the probative effect versus the prejudicial impact of the prior conviction, the trial court merely stated that the motion *in limine* was denied. The situation in the instant case is quite similar to that in *People v West,* 408 Mich 332; 291 NW2d 48 (1980), and, therefore, we hold that the trial court erred by not positively indicating and identifying its exercise of discretion in denying the defense motion to suppress the prior conviction."

We therefore conclude that the trial court's failure to "positively indicate and identify its exercise of discretion" constituted error.

The second error, as stated earlier, involves the use of evidence of defendant's previous criminal activity although defendant did not testify at trial. Defendant has subdivided this issue into two parts. We find that the trial court erred as to one of these subissues.

Defendant first claims that a prosecution witness, Mitchell Sanders, was improperly permitted to testify that defendant had told him that "Marie [Hesterley] and somebody else, Tracy [Caroline Pegram], or whoever, suppose *[sic]* to have jumped on some girl and, you know, pulled her in his car" while defendant was present. Sanders also testified that defendant had told him that he was afraid Hesterley would go to the police and that "[h]e didn't want to go back to the penitentiary", and therefore was not sure if he should "take her out", meaning "kill her". Defendant's second claim stems from the testimony, later in the trial, of

Officer Joseph Harris and Sergeant Bernard Brantley, who stated that after the murder they arrested defendant for armed robbery, not for murder. Brantley also read a police report to the jury which alleged that defendant, Pegram, and a woman believed to be Hesterley had committed an armed robbery.[1] On appeal, the prosecution states that it sought to introduce the officers' testimony, along with that of Sanders, to prove that defendant had intentionally killed Hesterley because she, Pegram, and defendant had committed an armed robbery (the crime described by Sanders) and because defendant feared Hesterley would report that crime and so send defendant back to prison. This evidence was critical to the prosecution's case because the issue at trial was whether defendant had intended to kill Hesterley or had merely been present when Pegram committed the murder for her own reasons.

Generally, "[w]hen a defendant does not testify, evidence of former convictions is inadmissible unless relevant and material to the issue being tried". *People v Kenneth Smith,* 39 Mich App 575, 577; 197 NW2d 842 (1972). See, also, *People v Fleish,* 321 Mich 443, 461; 32 NW2d 700 (1948), and *People v DerMartzex,* 390 Mich 410, 413; 213 NW2d 97 (1973). Our Courts have strictly followed the general rule because "there is a high degree of probability that a jury will infer [a defendant's] guilt of the offense charged on the basis of his past record". *People v Andrews #1,* 52 Mich App 719, 721; 218 NW2d 379 (1974), *modified on other grounds* 392 Mich 775; 220 NW2d 36 (1974). See, also, *People v Matthews,* 17 Mich App 48, 52; 169 NW2d 138 (1969).

---

[1] Defendant did not object to Harris's statement, which was fleeting and nonresponsive. However, when Brantley repeated the statement, defendant immediately objected. Brantley was permitted to read the police report to the jury over objection.

Defendant correctly argues that neither piece of evidence was properly admitted as "similar acts" evidence under MRE 404b, as construed by *People v Golochowicz,* 413 Mich 298; 319 NW2d 518 (1982), and *People v Major,* 407 Mich 394; 285 NW2d 660 (1979). The prosecution clearly failed to establish any similarity whatsoever between the shooting of Marie Hesterley and any of defendant's alleged prior offenses.

However, the inadmissibility of evidence of a particular prior offense as a "similar act" does not necessarily preclude its admission for nonimpeachment purposes. An example occurred in *People v Mauch,* 23 Mich App 723; 179 NW2d 184 (1970), *lv den* 384 Mich 765 (1970), where the defendant was on trial for prison escape. The prosecution was permitted to show the fact of defendant's imprisonment for another crime, even though there was no similarity between that crime and the escape charge, because the evidence was relevant (and necessary) as an element of the crime charged.

In this case, the prosecution argues that the testimony of Mitchell Sanders and of the two police officers was properly admitted to show defendant's motive for the murder. Generally, "[w]here the prior crime was a necessary preliminary to the successful commission of the ultimate crime, the preliminary crime may be shown". 1 Wharton's Criminal Evidence (13th ed), § 242, p 545. Specifically,

"Evidence of motive which suggests the doing of the act charged is always admissible, and this is true even though such evidence shows or tends to show the commission of another crime. Thus, where the motive for the crime charged is the concealment of some other

crime, as by killing a police officer or a witness, the evidence of such other crime is admissible to show motive." 1 Wharton's Criminal Evidence (13th ed), § 247, pp 561-564. (Footnotes omitted.)

This principle has been accepted in Michigan since at least *Templeton v People,* 27 Mich 501 (1873), and has been codified in MRE 404b. It was applied in *People v Ascher,* 126 Mich 637; 86 NW 140 (1901), where the defendant was a spiritualistic medium who had fraudulently induced his victim to wear a gold belt and then allegedly murdered the victim for the belt. At the murder trial, the prosecution was permitted to show that the victim's belt was missing when he was found. It was again applied in *People v Flynn,* 93 Mich App 713; 287 NW2d 329 (1979), *lv den* 409 Mich 852 (1980), where the defendant was on trial for felonious assault and felony-firearm for allegedly assaulting a police officer. The prosecution was permitted to show that the defendant had had illicit drugs in his home when the police arrived to arrest him because the evidence provided the motive for the defendant's assault on the officer. Other examples may be found in *People v Melvin,* 70 Mich App 138; 245 NW2d 178 (1976), *lv den* 399 Mich 817 (1977), and *People v Averill,* 59 Mich App 507; 229 NW2d 827 (1975).

In this case, the trial court properly admitted Mitchell Sanders's testimony that defendant had not wanted to return to prison. Although this statement revealed the fact that defendant had a criminal record, it was nevertheless admissible because it partially showed defendant's motive for murdering Marie Hesterley.

We cannot, however, say the same of the testi-

mony of officers Harris and Brantley.[2] Based on cases like *Ascher* and *Flynn,* the prosecution generally had the right to prove that an armed robbery had formed defendant's motive for the murder. However, the prosecution did not present evidence of an armed robbery, but only presented evidence that defendant was *arrested* for an armed robbery. The arrest itself did not form the motive as argued by the prosecution and, in fact, could not have done so because the murder had already been completed before the police arrived to arrest defendant. It was the armed robbery itself which allegedly motivated defendant to commit murder. This case is therefore distinguishable from *People v Flynn, supra,* and *People v Gosch,* 82 Mich 22; 46 NW 101 (1890), where the police activity formed the motives for the crimes. Here, therefore, the jury's understanding of the crime was not enhanced in any way by the testimony that defendant was to be arrested for armed robbery.

The inadmissibility of this testimony was not mitigated by the introduction of other evidence which allegedly showed that an armed robbery had occurred. The police officers' testimony was itself nothing but hearsay evidence that a robbery had occurred. Neither of the officers testified that they had seen the armed robbery; instead, in essence, they merely repeated the allegations of another, unnamed, person. Mitchell Sanders's testimony consisted only of a statement that Pegram and Hesterley had "jumped on some girl" and forced her into a car. This statement fails to show asportation, a taking, or the presence of a weapon,

---

[2] By itself, Harris's testimony would not constitute reversible error. As mentioned earlier, it was nonresponsive and fleeting, and defendant did not object. However, Brantley's testimony was objected to and was highly prejudicial. Harris's testimony, therefore, increased the prejudice because it constituted another mention of the arrest.

all necessary elements of armed robbery (see *People v Joseph Vannoy,* 106 Mich App 404; 308 NW2d 233 [1981], *rev'd on other grounds* 417 Mich 946; 332 NW2d 150 [1983]; MCL 750.529; MSA 28.797), and so failed to show an armed robbery. Finally, even if Sanders did describe a robbery, the prosecution completely failed to show that the police were arresting defendant for this particular robbery and not for another (unnamed and unproven) robbery. The prosecution merely presented Brantley's testimony that the police report showed that defendant, Pegram, and a woman believed to be Hesterley were involved. In effect, the prosecution merely accused defendant of committing an armed robbery without presenting any competent evidence that such a robbery had occurred or that defendant had committed it. The prosecution then went on to speculate to the jury that this unproven armed robbery had formed the basis for the murder. Similar speculation was condemned in *People v Van Wie,* 17 Mich App 77; 169 NW2d 160 (1969). Because the prosecution could not factually support its accusation, it should not have been permitted to present the evidence of the arrest for armed robbery.

We conclude that admission of this evidence, combined with the trial court's failure to acknowledge its discretion in the first issue, constitutes reversible error. Evidence of a defendant's prior criminal activity is so inherently prejudicial that, even where it is relevant, its admission often requires reversal. *People v Robinson,* 417 Mich 661; 340 NW2d 631 (1983); *People v Carter,* 387 Mich 397; 197 NW2d 57 (1972); *People v Greenway,* 365 Mich 547; 114 NW2d 188 (1962); *People v Deblauwe,* 60 Mich App 103; 230 NW2d 328 (1975); *People v Buffa,* 51 Mich App 680; 216 NW2d 494

(1974); *People v Budary,* 22 Mich App 485; 177 NW2d 672 (1970); *People v Slater,* 21 Mich App 561; 175 NW2d 786 (1970), *lv den* 383 Mich 799 (1970); *People v Camel,* 11 Mich App 219; 160 NW2d 790 (1968). Here, the evidence was both irrelevant and prejudicial. *People v McCarver (On Remand),* 87 Mich App 12, 16; 273 NW2d 570 (1978), *lv den* 406 Mich 964 (1979).

The combined effect of these errors cannot be considered harmless in light of the evidence against defendant. Defendant admitted being present at the murder scene, but denied intending to kill anyone. The prosecution conceded both at trial and on appeal that the evidence against defendant was purely circumstantial. Almost all of this evidence was relevant only to the issue of defendant's presence at the scene and could have been explained by his defense.[3] As both parties agreed during their closing arguments, the only issue in the trial was defendant's intent. Caroline Pegram confessed to the police that she had done the killing. She further limited defendant's role in the killing by stating that she had originally intended only "to beat [Hesterley's] ass" and had enlisted defendant's help in that. According to Pegram, defendant had pushed Hesterley from the car to the ground and had hit her once, but Pegram alone had first attempted to strangle Hesterley, had fallen with her knees onto Hesterley's head, had stabbed her with a screwdriver, hit her with the pistol, and *then* decided to kill Hesterley.

[3] For example, although defendant's ring and watch were found by Hesterley's body, defendant admitted having been there. Hesterley's hair was found in the car defendant was driving. However, the car had in fact belonged to Hesterley and she had permitted defendant to use it. Ballistics evidence showed that defendant's gun (found in his motel room when he was arrested) had fired the shots that killed Hesterley. However, defendant claims (and Pegram confessed) that Pegram had fired the shots. The prosecution presented no direct evidence disputing this contention.

Finally, Pegram stated that defendant had not known that she would shoot the victim. Given this testimony, we cannot say that the admission of defendant's prior record and the trial court's failure to exercise its discretion was harmless.

Because we are remanding this case for a new trial, we will address defendant's remaining issues. Defendant first argues that the gun taken from his hotel room was illegally seized. After reviewing our decision on this issue in our first opinion, we once again conclude that the trial court correctly admitted the gun into evidence.

Defendant next argues that the trial court committed error by failing to include the following instruction in its premeditation instruction:

"While the minimum time necessary to exercise this process is incapable of exact determination, the interval between initial thought and ultimate action should be long enough to afford a reasonable man time to subject the nature of his response to a 'second look'." (Footnote omitted.) *People v Morrin*, 31 Mich App 301, 330; 187 NW2d 434 (1971), *lv den* 385 Mich 775 (1971). See, also, CJI 16:2:01(14).

The trial court instead instructed the jury:

"The third element in first-degree murder is the element of premeditation. It is kind of a difficult word. Premeditation is frequently used with idealization—weigh. You're going to consider and wonder what to do with the case. The concept of premeditation involves more or less the same process. Did the person or persons who killed Ira Marie Hesterley plan her death? Did they weigh back and forth? Consider whether they talked about it or not as individuals or collectively, if that was the case, whether or not the killing should take place. Was it planned? Was it premeditated? Was it weighed? Was it considered? Was it deliberated? If

you find the killing of Ira Marie Hesterley was premeditated in the sense I have described it, the three elements would be sufficient for a finding of first-degree murder."

We find this instruction sufficient. *People v Collins,* 43 Mich App 259, 269; 204 NW2d 290 (1972), *lv den* 391 Mich 798 (1974), *cert den* 419 US 866; 95 S Ct 121; 42 L Ed 2d 103 (1974); *People v Bodley,* 38 Mich App 27; 195 NW2d 803 (1972), *lv den* 387 Mich 777 (1972).

Defendant next argues that being convicted for both first-degree murder and felony firearm violates his right against double jeopardy. However, this contention has been rejected in *Wayne County Prosecutor v Recorder's Court Judge,* 406 Mich 374; 280 NW2d 793 (1979), *app dis* 444 US 948; 100 S Ct 418; 62 L Ed 2d 317 (1979); *Missouri v Hunter,* 459 US 359; 103 S Ct 673; 74 L Ed 2d 535 (1983).

Defendant also argues that the felony-firearm statute violates Const 1963, art 4, § 25 by amending other statutes by implication. However, once again, this argument has been rejected. *E.g., People v Jackson,* 94 Mich App 24; 287 NW2d 357 (1979); *Wayne County Prosecutor v Recorder's Court Judge,* 92 Mich App 433; 285 NW2d 318 (1979), *lv den* 408 Mich 905 (1980); *People v Gary Hughes,* 85 Mich App 674; 272 NW2d 567 (1978).

Defendant last argues that his right to confrontation was violated when, during cross-examination, Detroit Police Sergeant Gilbert Hill testified that Pegram had told him that defendant had shot Hesterley. Hill, defendant's witness, had testified on direct examination that Pegram had admitted shooting Hesterley herself during a taped confession. Pegram then revised this statement after she

was charged with the crime and instead accused defendant of the crime.

Because Pegram would have pled the Fifth Amendment, she was unavailable as a witness. Therefore, her original statement was admissible as a declaration against penal interest. MRE 804(b)(3); *People v Ernest Edwards,* 396 Mich 551; 242 NW2d 739; 92 ALR3d 1149 (1976). However, the subsequent statements, brought out in cross-examination, could not also be justified under this exception. Hence, this testimony was inadmissible as hearsay. We therefore do not need to address any confrontation issue. See *Ohio v Roberts,* 448 US 56; 100 S Ct 2531; 65 L Ed 2d 597 (1980); *Bruton v United States,* 391 US 123; 88 S Ct 1620; 20 L Ed 2d 476 (1968).

However, this testimony was not admitted as hearsay. Instead, it was admitted to impeach the declarant. MRE 806 states:

"When a hearsay statement, or a statement defined in Rule 801(d)(2)(C), (D), or (E), has been admitted in evidence, the credibility of the declarant may be attacked, and if attacked may be supported, by any evidence which would be admissible for those purposes if declarant had testified as a witness. Evidence of a statement or conduct by the declarant at any time, inconsistent with his hearsay statement, is not subject to any requirement that he may have been afforded an opportunity to deny or explain."

This testimony was therefore properly admitted. However, if this same situation arises at retrial, the trial court must instruct the jury that this evidence may be used only for impeachment purposes and not as substantive evidence. *Dalton v Dregge,* 99 Mich 250; 58 NW 57 (1894); *People v Maunausau,* 60 Mich 15; 26 NW 797 (1886).

Reversed and remanded for a new trial.

BRONSON, J., concurred.

CYNAR, J. *(concurring)*. I concur in the result reached by the majority based only on the first error involving the trial court's decision not to suppress defendant's prior record for impeachment purposes. Failure by the trial court to positively indicate and identify its exercise of discretion constituted error.