PEOPLE v NOBLE

Docket No. 80994. Submitted December 5, 1985, at Lansing. Decided June 3, 1986. Leave to appeal applied for.

Thomas Noble was convicted of knowingly making false statements of material fact in his application for a motor vehicle certificate of title and of being an habitual offender following a jury trial in Washtenaw Circuit Court, Patrick J. Conlin, J. The charge arose out of defendant's applying for a certificate of title for a 1976 Chevrolet pickup truck. In the application, defendant stated that he owned a 1976 Chevrolet pickup truck, that the seller was Ray Mars and that the purchase price was $500. In fact, defendant had purchased for $100 only the cab and frame of the 1976 pickup from a vocational training center which had been given the pickup after it had been totaled, and Ray Mars, on the date of his alleged sale of the truck, was dead. The license plate secured by that application, along with the VIN plate from the 1976 pickup, was found on a 1978 Chevrolet wrecker which had previously been reported stolen, and the 1976 pickup registration was found in the glove box of the 1978 wrecker. Defendant appealed. *Held:*

1. Defendant's claim that the statute is unconstitutionally vague is without merit, since it is clear under the present circumstances that the statement that he had purchased the vehicle from Ray Mars for $500 was calculated to cover up the true nature of his transaction with the vocational training center and thereby conceal from the Department of State the fact that the 1976 pickup was not qualified as a motor vehicle subject to registration.

2. The question of whether a fact is a material fact within

REFERENCES

Am Jur 2d, Appeal and Error §§ 575 *et seq.*

Am Jur 2d, Automobiles and Highway Traffic §§ 25-29, 42-48, 977-1093.

Liability of state, in issuing automobile certificate of title, for failure to discover title defect. 28 ALR4th 184.

Validity and construction of legislation authorizing revocation or suspension of operator's license for "habitual", "persistent", or "frequent" violations of traffic regulations. 9 ALR3d 756.

the meaning of the statute is a question of law for the court to decide.

3. Defendant's claim that reversal is mandated by the trial court's instructing the jury that the charged crime was a specific intent crime is without merit in that, if that instruction was erroneous, the instruction imposed a greater burden on the prosecution. Whether a general or specific intent crime, the prosecution was entitled to show motive; therefore, treating the crime as a specific intent crime did not open the door to the introduction of evidence as to defendant's motive.

4. The evidence was more than sufficient to convict; therefore, the trial court did not err in denying defendant's motions to quash and for a directed verdict.

Affirmed.

1. AUTOMOBILES — TITLES — MISSTATEMENT OF MATERIAL FACTS — CRIMINAL LAW.

Any misstatements by one seeking to title a motor vehicle as to the value and seller of the vehicle, where such misstatements are for the purpose of concealing from the Department of State information that would suggest that the vehicle for which title is being sought is a wrecked vehicle, are misstatements of a material fact within the meaning of the statute making criminal the making of false statements of material fact in an application for a motor vehicle title (MCL 257.254; MSA 9.1954).

2. CRIMINAL LAW — STATUTES — UNCONSTITUTIONALLY VAGUE STATUTES — STANDING.

A criminal defendant has standing to raise a challenge to a statute on the ground that it is unconstitutionally vague only if the statute is allegedly vague as applied to his conduct.

3. AUTOMOBILES — TITLES — MISSTATEMENT OF MATERIAL FACTS — COURTS — CRIMINAL LAW.

It is for the court in a prosecution for making false statements of material fact in an application for a motor vehicle title to decide as a matter of law the issue of whether the alleged misstatement related to a material fact, since materiality is generally an issue for the court to decide (MCL 257.254; MSA 9.1954).

4. CRIMINAL LAW — EVIDENCE — MOTIVE.

Evidence of an accused's motive is always relevant and admissible even if the charged crime is one of general intent.

5. APPEAL — PRESERVING QUESTION.

A mere statement of position without argument or citation of

authority is insufficient to bring an issue before an appellate court.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *William F. Delhey,* Prosecuting Attorney, and *Jack F. Simms, Jr.,* Assistant Prosecuting Attorney, for the people.

*Raymond G. Mullins,* for defendant.

Before: CYNAR, P.J., and WAHLS and GRIBBS, JJ.

PER CURIAM. Defendant was convicted of knowingly making false statements of material facts in his application for the certificate of title provided for in the Michigan Vehicle Code, MCL 257.254; MSA 9.1954. Defendant was also convicted as an habitual offender, second offense. Sentenced to a prison term of from 2½ to 10 years, defendant appeals as of right. We affirm.

The evidence tends to show a scheme to defraud an insurance company. On September 27, 1982, the Frisco's Towing & Storage yard reported that its 1978 Chevrolet wrecker was stolen. In fact, the wrecker was not stolen. It appears that the defendant and Charles Louis Francisco, part owner of the Frisco's yard, conspired together to hide the wrecker and modify it to look like another vehicle, which defendant could then use.

In early November, 1982, defendant bought for $100 the cab and rear frame of a 1976 Chevrolet half-ton pickup truck. This truck had been "totaled" in an accident and donated by the owner to a vocational training center. After the truck was dismantled, some of its parts were offered for sale, and defendant was able to obtain the cab and frame. The vocational training center had never titled the wreck and turned the previous owner's

certificate of title over to defendant with the transferee space still blank.

On November 9, 1982, defendant or an acquaintance took the certificate for the 1976 Chevy to an office of the Secretary of State and applied for an "expedited" title in the name of Ray Mars. Because Mars' signature as transferee was notarized, the office personnel did not request identification. Subsequent investigation revealed that Ray Mars was a dead man, that his "signature" may have been written by Charles Francisco, and the "notarization" was made by someone who was not a notary. The higher of the full purchase price or retail value was given as $1,000.

On November 29, 1982, defendant went to an office of the Secretary of State to apply for a certificate of title showing his ownership of the 1976 Chevy. On his application, defendant stated that he purchased the truck on November 18, 1982, from Ray Mars for $500, that the truck weighed 4,122 pounds and that it was insured by the Samples Insurance Agency. Defendant obtained a license plate, number CS 0148.

On December 7, 1982, detectives found the 1976 truck cab at the Frisco's yard with the vehicle identification number (VIN) plate removed. By checking in a hidden location, they verified the true VIN of the cab.

On January 6, 1983, acting on a tip, detectives found a Chevy wrecker bearing the VIN plate from the 1976 cab and a license plate with defendant's number CS 0148 and which had written on its side the name "T & N Towing" and defendant's telephone number. Defendant's 1976 truck registration was in the glovebox. However, the wrecker was a 1978 Chevy and a check of the hidden VIN revealed that it was the wrecker reported stolen by the Frisco's yard.

The wrecker was impounded, but it was returned to the Frisco's yard on January 26, 1983. The next day, a detective saw defendant driving the vehicle.

In October, 1983, defendant told a detective that the whole thing was Charles Francisco's idea. Defendant maintained then, as he continues to do now, that he did not know that what he had done was wrong.

The first two complaints filed against defendant were dismissed. The third alleged six false statements of material facts: (1) that defendant owned a 1976 Chevrolet pickup truck; (2) that the seller was Ray Mars; (3) that the truck weighed 4,122 pounds; (4) that the truck was purchased on November 18, 1982; (5) that the purchase price was $500; and (6) that the truck was insured by the Samples Insurance Agency. The district court concluded as a matter of law that only the second, fourth and fifth statements involved material facts. Subsequently, the prosecutor conceded that the date of purchase was not material. Thus, the jury considered only whether defendant had knowingly made false statements by indicating on the application for title that he purchased the truck from Ray Mars and that the purchase price was $500.

On appeal, defendant argues that MCL 257.254; MSA 9.1954 is unconstitutionally vague. He further contends that any construction of the statute which would cure the vagueness and bring his actions within the statute's reach cannot be retroactively applied to support his conviction.

As a foundation for answering defendant's argument, some discussion of the statute and its context is in order. The statute is only one part of a statutory scheme dealing with automobiles and

stolen goods in general. The Michigan Penal Code prohibits receiving, possessing and concealing stolen property, MCL 750.535; MSA 28.803, and removing and defacing of VINs, MCL 750.415; MSA 28.647. *People v Boscaglia,* 419 Mich 556, 564; 357 NW2d 648 (1984). The provisions of the Vehicle Code are to be distinguished in that they "must be read to be germane only to conduct affecting titles or their fraudulent transfer." *People v Morton,* 384 Mich 38, 40; 179 NW2d 379 (1970).

Intertwined in the provisions of the Vehicle Code governing certificates of title are purposes to combat fraud and theft and to enhance safety. For example, assume that the truck cab that defendant purchased from the training center had been from a 1978 vehicle. When that vehicle was wrecked in September, 1982, it became a "distressed vehicle," MCL 257.12a; MSA 9.1812(1), and would also have been a "late model vehicle," MCL 257.24b; MSA 9.1824(2). Upon acquisition of this vehicle, the vocational training center would have been required to surrender the assigned certificate of title and make application for a salvage certificate of title. MCL 257.217c(3); MSA 9.1917(3)(3). When defendant then purchased the cab, he would not have been able to obtain a regular certificate of title until he rebuilt the truck to comply with the equipment standards of the code and proved his ownership of the repair parts used to the satisfaction of a specially trained police officer. MCL 257.217c(5); MSA 9.1917(3)(5). The existence of the salvage certificate of title would have to be noted on any subsequent application for a certificate of title. MCL 257.217(1)(b); MSA 9.1917(1)(b). The fact that these provisions apply only to late model vehicles apparently reflects a legislative choice to focus on the most pressing aspect of a problem, since late model vehicles presumably

outnumber older model vehicles and are more expensive and more desirable than older vehicles.

Other provisions of the Vehicle Code reveal a legislative intention that the availability of certificates of title be strictly limited. MCL 257.219(2); MSA 9.1919(2) provides that the Secretary of State shall refuse issuance of a certificate of title upon certain grounds, including that "the applicant is not entitled to the issuance of a certificate of title." By negative inference, the command of MCL 257.217(1); MSA 9.1917(1), that an owner of vehicle subject to registration must apply for issuance of a certificate of title, suggests that an owner of a vehicle which is not a motor vehicle or of a motor vehicle not subject to registration is not entitled to issuance of a certificate of title. See MCL 257.216; MSA 9.1916. Thus, defendant was not entitled to issuance of a certificate for this 1976 cab and rear frame as, in the absence of an engine and front frame and axle, it was assuredly not a motor vehicle. *Boscaglia, supra.* This conclusion is supported by MCL 257.258; MSA 9.1958, which permits the Department of State to cancel, revoke or suspend the certificate of title to a registered vehicle which has been dismantled or wrecked.

While the Department of State is authorized to make investigations, MCL 257.209; MSA 9.1909, it is clear that the department must place great reliance on the information provided in an application for certificate of title. To this end, the Legislature has set forth what information is required, authorized the Secretary of State to demand additional information, provided for the refusal to issue or revocation of a certificate of title if a false statement is made, and further provided, in § 254, for criminal penalties if the false statement is of a material fact.

What is a material fact for purposes of § 254 has

not been addressed by the appellate courts of this state. In *People v Ciatti,* 17 Mich App 4; 168 NW2d 902 (1969), this Court concluded that representing the duplicate title of one automobile to constitute title to a stolen automobile was a false statement of a material fact. The Court did not explain its reasoning. CJI 24:4:02(3) states that a material fact means "an essential matter required for a valid transfer." The instruction does not state its source. With this meaning the statutory language "of a material fact" arguably is rendered redundant because every false statement is grounds for refusal to issue a certificate, MCL 257.219(2)(a); MSA 9.1919(2)(a), or, where the department discovers the false statement after issuance, for cancellation, revocation or suspension of the certificate. MCL 257.258; MSA 9.1958.

We need not decide in this case how broad a meaning the term "material fact" may or ought to be given. Defendant's false statements that he purchased the truck from Ray Mars for a price of $500 were obviously calculated to cover up the true nature of his transaction with the vocational training center. Had he stated the value of the six-year old truck as $100, the Department of State may have been suspicious and investigated whether the alleged vehicle qualified as a "motor vehicle subject to registration." Had he truthfully named his seller, the department's investigation would have been a short and simple matter. Defendant's actions are prohibited by § 254 without any need for a judicial gloss. Accordingly, defendant's vagueness challenge must fail because the statute is not vague as applied to the facts of this case. *People v Mitchell,* 131 Mich App 69, 74-75; 345 NW2d 611 (1983).

Defendant raises several other issues which we will address only briefly. Defendant argues that

the trial court erred by deciding as a matter of law the issue of material fact. Defendant asserts that the issue is for the Legislature or, at the least, should have gone to the jury. We disagree. In Michigan, materiality is generally an issue for the court to decide. *People v Hoag,* 113 Mich App 789, 798; 318 NW2d 579 (1982), lv den 417 Mich 896 (1983).

Defendant also argues that the trial court erred in giving a specific intent instruction. This argument is meritless because the instruction, if error, imposed a greater burden of proof on the prosecutor than required and thus favored defendant. Nevertheless, defendant argues that he was prejudiced because the court's viewing of the crime as being one requiring the showing of specific intent opened the door for the prosecutor to introduce prejudicial evidence of motive. This argument is misplaced because the evidence of motive was relevant and admissible even if the crime is one of general intent. *People v Federico,* 146 Mich App 776, 793; 381 NW2d 819 (1985); *People v Handley (On Remand),* 135 Mich App 51, 58; 352 NW2d 343 (1984), rev'd 422 Mich 859 (1985).

Defendant next argues that the evidence was insufficient and the court erred by denying his motions to quash and for a directed verdict. If anything, there was more evidence against defendant at the preliminary examination than at trial. We are satisfied that the evidence, viewed in a light most favorable to the prosecution, suports finding beyond a reasonable doubt that defendant applied for a vehicle certificate of title, made false statements of material facts and made the statements knowing them to be false.

Defendant finally argues that he was denied a fair trial because of a "plethora" of errors including but not limited to a list of alleged errors

provided in his brief. A mere statement of position without argument or citation of authority is insufficient to bring the issue before an appellate court. *Federico, supra,* p 797. Thus, we find it unnecessary to review many of the alleged errors. Suffice it to say, upon our review of the record, we do not find that defendant was denied a fair trial.

Affirmed.